[No. D058317. Fourth Dist., Div. One. Nov. 17, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIUS ALLEN SAMPLE, Defendant and Appellant.

**COUNSEL**

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McCONNELL, P. J.—**

## INTRODUCTION

A jury convicted Julius Allen Sample of three counts of receiving stolen property (Pen. Code, § 496, subd. (a)),[1] two counts of identity theft (§ 530.5, subd. (a)), three counts of possessing child pornography (§ 311.11, subd. (a)), six counts of residential burglary (§§ 459, 460) and one count of burglary (§ 459). The jury also found true allegations that another person, other than an accomplice, was present during five of the residential burglaries (§ 667.5, subd. (c)(21)). In addition, the trial court found true allegations Sample had a prior serious felony conviction and a prior strike conviction (§§ 667, subds. (a)(1), (b)–(i), 1170.12). The trial court sentenced Sample to an aggregate term of 42 years four months in prison.

Sample appeals, contending there is insufficient evidence to support three separate convictions for possession of child pornography. He also contends there is insufficient evidence his prior Florida burglary conviction qualified as a prior strike conviction under California law.

The People concede Sample could only be convicted of two of the three counts of possession of child pornography, and we reverse the judgment as to one of the counts. We affirm the judgment in all other respects.

---

[1] Further statutory references are also to the Penal Code unless otherwise stated.

## DISCUSSION[2]

### I

### *Child Pornography Convictions*

#### A

After Sample's arrest, police officers searched Sample's backpack and his storage shed. In Sample's backpack, the officers found a stolen computer and a removable hard drive. In Sample's storage shed, the officers found another stolen computer. Both computers and the hard drive contained child pornography. The prosecution charged and the jury convicted Sample of three counts of possession of child pornography: one count for the child pornography on each computer (counts 19 and 20) and one count for the child pornography on the hard drive (count 21).

On appeal, Sample contends we must reverse two of his possession of child pornography convictions because case law only permits one conviction for simultaneous possession of multiple images of child pornography, even if the images are contained on different computers or hard drives. The People concede Sample could not be properly convicted of all three counts of possessing child pornography. Nonetheless, the People contend Sample could be properly convicted of one count for possessing the child pornography in the computer and removable hard drive found in his backpack, and one count for possessing the child pornography in the computer found in his storage shed because the possession occurred at different locations. We agree.

#### B

■ California law prohibits the knowing possession of "any matter" depicting persons under 18 years of age engaging in or simulating sexual conduct. (§ 311.11, subd. (a).)[3] Two appellate courts have addressed the question of whether simultaneous possession of multiple items of child

---

[2] Given the narrow and distinct issues raised on appeal, we omit a general summary of the facts underlying all of Sample's crimes. We instead include a separate summary of the relevant facts in our discussion of each issue raised on appeal.

[3] Section 311.11, subdivision (a) provides: "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18

pornography constitutes multiple offenses or a single offense: *People v. Hertzig* (2007) 156 Cal.App.4th 398 [67 Cal.Rptr.3d 312] (*Hertzig*) and *People v. Manfredi* (2008) 169 Cal.App.4th 622 [86 Cal.Rptr.3d 810] (*Manfredi*).

In *Hertzig*, the defendant had multiple videos of children engaged in sexual acts on his computer. (*Hertzig, supra*, 156 Cal.App.4th at p. 400.) The prosecution charged the defendant with and a jury convicted him of 10 counts of possession of child pornography. (*Id.* at pp. 400–401.) On appeal, he argued his possession of multiple child pornography videos constituted a single violation of section 311.11, subdivision (a). (156 Cal.App.4th at p. 401.) The appellate court agreed. (*Id.* at pp. 399, 401–402.)

The appellate court reviewed cases involving multiple convictions for other types of possession crimes and derived two distinct principles from them. (*Hertzig, supra*, 156 Cal.App.4th at p. 402.) First, the simultaneous possession of multiple items of one type of contraband constitutes a single violation. (*Id.* at pp. 402–403.) Second, the simultaneous possession of two types of contraband in the same location constitutes a single violation. (*Id.* at p. 403.) Applying these principles, the court concluded the defendant's possession of multiple pornographic videos constituted a single act of possession under section 311.11, subdivision (a). (*Hertzig, supra*, at p. 403.)

In *Manfredi*, the prosecution filed a complaint charging the defendant with multiple counts of possession of child pornography after police officers found multiple items of child pornography in the defendant's home. Each count referenced a separate item of pornography. (*Manfredi, supra*, 169 Cal.App.4th at pp. 624–625.) The defendant demurred to the complaint, arguing that, under *Hertzig*, the prosecution could only charge him with one possession count. (*Manfredi, supra*, at p. 625.) The prosecution countered that it could charge him with multiple possession counts because the specified items of child pornography were in separate media containers (i.e., separate computers, hard drives, discs, and tapes). (*Id.* at pp. 625, 629.)

██ The appellate court agreed with the defendant's position. After reviewing the same possession cases relied upon in *Hertzig*, the appellate court rejected the prosecution's one container equals one possession argument and held that "simultaneous possession of multiple child pornography materials at the same location is chargeable as but one criminal offense . . . ." (*Manfredi, supra*, 169 Cal.App.4th at pp. 624, 634.)

The People contend *Hertzig* and *Manfredi* are distinguishable because in those cases police officers found the child pornography at the same time and

years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony . . . ."

in the same location. In this case, however, police officers found the child pornography at two different times in two separate locations: Sample's backpack and Sample's storage shed. We agree this distinction permits Sample's conviction for two separate possession counts.

As the *Hertzig* and *Manfredi* courts did, we look to analogous possession cases for guidance and find *People v. Von Latta* (1968) 258 Cal.App.2d 329 [65 Cal.Rptr. 651] (*Von Latta*) particularly instructive. In *Von Latta*, police officers found the defendant in someone else's home with a marijuana pipe in his hand. The officers found additional marijuana on a table in the same room. (*Id.* at p. 333.) Six hours later, the officers searched the defendant's home, which was approximately 30 miles away from where they arrested the defendant, and found four pounds of marijuana hidden in the defendant's garage. (*Id.* at p. 334.) On appeal, the defendant argued he could not be separately convicted for his actual possession of marijuana at someone else's home and his constructive possession of marijuana in his garage, as these two offenses constituted a single act. (*Id.* at p. 338.) The appellate court disagreed, reasoning that possession offenses occurring at different times and locations, even if they occurred on the same day, are separate and distinct acts supporting separate convictions. (*Id.* at pp. 339–340.)

█ Applying *Von Latta* to this case, we conclude Sample's act of actually possessing child pornography in the computer and removable hard drive found in his backpack was separate and distinct from his act of constructively possessing child pornography in the computer found in his storage shed. Thus, we conclude he was properly convicted of two of the three possession counts.

II

*Prior Strike Conviction Finding*

A

The prior strike conviction allegations against Sample involved a Florida burglary conviction.[4] To prove the allegations, the prosecution submitted and the trial court admitted into evidence an exhibit containing an information filed in a Florida circuit court charging Sample with burglary of a dwelling, a

---

[4] The appellate record did not include the evidence relating to Sample's Florida conviction or a transcript of the first day of the bench trial on the prior conviction allegation. Because Sample challenged the trial court's findings regarding the Florida conviction, we augmented the record on our own motion to include these items and ordered copies of them to be provided to counsel. We also provided counsel an opportunity to supplement their arguments based on the augmented items.

plea form indicating he pleaded nolo contendere to the lesser included offense of burglary of a structure, and a judgment adjudicating him guilty of the latter offense.[5]

The prosecution also submitted and the trial court admitted into evidence an exhibit containing a transcript of the Florida court proceedings. According to the transcript, Sample's defense counsel informed the Florida court Sample agreed to plead no contest to the burglary of a structure offense in exchange for a six-month jail sentence.[6] Sample confirmed his assent to the agreement. After he also confirmed he reviewed, understood, and signed the plea form and acknowledged he was waiving his constitutional rights by entering the plea, Sample pleaded no contest to the charge of burglary of a structure.

The Florida court then asked the prosecutor for the factual basis for Sample's plea. The prosecutor stated that Sample had entered the victim's home, the victim was there at the time and heard noises, the victim yelled at Sample to get out of his house and saw Sample running away. Sample was later apprehended and the victim's wallet was found nearby. Neither Sample nor his defense counsel objected to or responded to the prosecutor's recital and, after hearing it, the court accepted Sample's plea.

Immediately after accepting the plea, the Florida court asked Sample's defense counsel whether there was any legal cause why Sample's sentencing should be delayed. Defense counsel did not identify any cause nor did he comment on what had transpired in the proceedings to that point. Rather, he asked the court to consider work release for Sample. The court then asked Sample whether there was anything he wanted to say before the court imposed his sentence. Sample replied, "Um, if I could get a job in the outside, I [unintelligible] taking responsibility for my actions and all, this will never happen again." After determining there was no cause to delay sentencing, the court once again accepted Sample's plea of no contest, adjudicated him guilty of burglary of a structure, and sentenced him to the agreed-upon term of six months in jail.

Based on this evidence, the trial court in the instant case found Sample suffered the prior Florida conviction. The trial court further found the conviction qualified as a prior strike conviction under California law.

---

[5] Sample admitted during the jury trial on the substantive offenses that he had previously been convicted in Florida of a felony involving theft.

[6] The Florida court simultaneously handled Sample's plea and the pleas of four other defendants in an assembly line fashion. We reference only those portions of the transcript dealing with Sample's plea.

## B

Sample contends there is insufficient evidence his prior Florida burglary conviction qualifies as a prior strike conviction under California law because there is insufficient evidence that the structure he burglarized was a residence or that he entered the structure with the intent to commit theft. We conclude there is no merit to this contention.

██ "For an out-of-state conviction to render a criminal offender eligible for sentencing under the three strikes law [citations], the foreign crime (1) must be such that, 'if committed in California, [it would be] punishable by imprisonment in the state prison' [citations], and (2) must 'include[] all of the elements of the particular felony as defined in' section 1192.7[, subdivision] (c)." (*People v. Warner* (2006) 39 Cal.4th 548, 552–553 [47 Cal.Rptr.3d 1, 139 P.3d 475].) Among the felonies included in section 1192.7, subdivision (c)(18), is "any burglary of the first degree."

██ The elements of first degree burglary in California are (1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony. (§§ 459, 460; *People v. Anderson* (2009) 47 Cal.4th 92, 101 [97 Cal.Rptr.3d 77, 211 P.3d 584].) However, the Florida statute under which Sample was convicted defines burglary as: "Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." (Fla. Stats. Ann. § 810.02(1)(b)(1) (LexisNexis, 2011).) "Structure" in this context "means a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." (Fla. Stats. Ann. § 810.011(1) (LexisNexis, 2011).) Thus, the Florida statute under which Sample was convicted is broader than California's first degree burglary statute and could encompass both conduct considered first degree burglary in California as well as lesser conduct.

In such situations, a trial court may look behind the statutory elements of the prior crime and consider the entire record of conviction to determine whether a defendant's actual conduct constitutes a prior strike conviction under California law. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082 [77 Cal.Rptr.3d 270, 183 P.3d 1236]; *People v. Riel* (2000) 22 Cal.4th 1153, 1204–1205 [96 Cal.Rptr.2d 1, 998 P.2d 969].) A prosecutor's comments occurring immediately before a court accepts a defendant's guilty plea are part of the record of conviction. (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1120 [125 Cal.Rptr.3d 810] (*Roberts*); see also *In re Richardson* (2011) 196 Cal.App.4th 647, 667 [126 Cal.Rptr.3d 720] [factual basis for the defendant's plea supplied by prosecutor and not objected to by the defendant is part of the record of proceedings for purposes of determining whether a prior conviction qualifies as a strike].)

The factual basis the Florida prosecutor supplied indicated Sample entered a person's home without the person's permission and took the person's wallet. These facts are sufficient to establish Sample entered a structure currently being used for dwelling purposes. (§§ 459, 460.) They are also sufficient to establish he entered the structure with the intent to steal. (*People v. Moomey* (2011) 194 Cal.App.4th 850, 858 [123 Cal.Rptr.3d 749]; *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541 [81 Cal.Rptr.3d 119] [evidence of theft of property after entry creates a reasonable inference intent to steal existed at the time of entry].) Accordingly, there is sufficient evidence to support the trial court's finding the actual conduct underlying Sample's Florida conviction constituted a first degree burglary and qualifies as a prior strike conviction under California law.

Sample, however, contends the trial court erred in considering the factual basis the Florida prosecutor supplied because it was inadmissible hearsay. The People counter that the trial court properly considered the factual basis because it constituted an adoptive admission. We agree with the People.

 The hearsay exception for adoptive admissions is codified in Evidence Code section 1221, which provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." Thus, " ' "[w]hen a person makes a statement in the presence of a party to an action under circumstances that would normally call for a response if the statement were untrue, the statement is admissible for the limited purpose of showing the party's reaction to it. [Citations.] His silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence." ' " (*People v. Jennings* (2010) 50 Cal.4th 616, 661 [114 Cal.Rptr.3d 133, 237 P.3d 474].)

"Whether the statement constitutes an adoptive admission is 'determined upon the facts and circumstances therein presented.' " (*Roberts, supra,* 195 Cal.App.4th at p. 1121.) For a statement to be an adoptive admission, there must be sufficient evidence to sustain a finding that (1) the defendant heard and understood the statement under circumstances normally calling for a response, and (2) the defendant adopted the statement as true by the defendant's words or conduct. (*People v. Davis* (2005) 36 Cal.4th 510, 535 [31 Cal.Rptr.3d 96, 115 P.3d 417].)

Two appellate courts have addressed the application of the adoptive admission hearsay exception in circumstances similar to those presented in this case: *People v. Sohal* (1997) 53 Cal.App.4th 911 [62 Cal.Rptr.2d 110]

(*Sohal*) and *Roberts, supra*, 195 Cal.App.4th 1106.[7] In *Sohal*, the trial court determined the defendant's prior assault conviction constituted a prior strike conviction because it involved the personal use of a deadly or dangerous weapon. (*Sohal, supra*, at p. 914.) The trial court based its determination on the factual basis supplied by the prosecution when the defendant pleaded guilty to the assault offense. More particularly, the prosecution stated it could produce evidence that the defendant had struck a man with a metal pipe with enough force to cause bodily injury. Defense counsel agreed the prosecution could produce such evidence. Immediately after this exchange, the court asked the defendant for his plea to the charge of assault with a deadly weapon and he replied, " 'No contest and I am guilty.' " (*Ibid.*)

On appeal, the defendant argued the prosecution's recital was insufficient to establish the assault conviction was a prior strike conviction because the recital was inadmissible hearsay. (*Sohal, supra*, 53 Cal.App.4th at pp. 914–915.) The appellate court disagreed, however, concluding the recital was an adoptive admission because defense counsel agreed with it and because the defendant specifically pleaded guilty to assault with a deadly weapon and not a lesser form of assault. (*Id.* at p. 916.)

*Roberts* similarly involved the question of whether a prior Washington assault conviction qualified as a prior strike conviction under California law. (*Roberts, supra*, 195 Cal.App.4th at pp. 1111–1112.) As in *Sohal* and the instant case, the prior conviction at issue in *Roberts* resulted from a guilty plea and the trial court determined it constituted a prior strike conviction relying at least in part on the factual basis supplied by the prosecution at the guilty plea hearing. (*Roberts, supra*, at pp. 1113–1116.) Specifically, immediately after the defendant pleaded guilty, the prosecution stated the defendant had bit a woman's lip during a physical altercation with her, part of the woman's lip could not be reattached, and the woman had permanent scarring. (*Id.* at pp. 1115, 1119.) Neither defense counsel nor the defendant commented on the prosecution's recital. (*Id.* at p. 1119.) Based on the recital, the Washington court determined there was a factual basis for the defendant's plea and accepted it. (*Ibid.*)

Unlike the *Sohal* court, however, the *Roberts* court concluded the prosecution's factual recital was not admissible as an adoptive admission. (*Roberts, supra*, 195 Cal.App.4th at p. 1112.) The court noted the defendant's guilty plea was an "*Alford* plea," in which the defendant did not admit the facts underlying the charged offense, but pleaded guilty to take advantage of a

---

[7] The *Roberts* case was decided after the parties submitted their briefing in this case. We provided the parties with an opportunity to supplement their briefing based on the *Roberts* case. Both parties elected to do so and we considered their supplemental briefing in reaching our decision.

favorable recommendation from the prosecution and because he recognized he might be convicted if the case were tried.[8] (*Roberts, supra,* at p. 1121.) Moreover, before the defendant pleaded guilty, the Washington court reviewed the nature of an *Alford* plea with him and specifically explained to him that he was not admitting the facts underlying the charged offense. (*Id.* at p. 1121.) Under such circumstances, the *Roberts* court concluded the defendant would not normally be expected to respond to the prosecution's factual recital. (*Ibid.*) Thus, the court concluded that the defendant's lack of a response could not be an adoptive admission. (*Id.* at p. 1123.)

The *Roberts* court distinguished *Sohal* because the defendant in *Sohal* entered his no contest plea after the prosecution's factual recital. In addition, his plea was specifically to the crime of assault with a deadly weapon, which is a strike offense.[9] (*Roberts, supra,* 195 Cal.App.4th at pp. 1122–1123.)

*Sohal* is not precisely analogous to the instant case because Sample made his no contest plea after the prosecution's factual recital, but before the trial court accepted it. Likewise, *Roberts* is not precisely analogous because Sample did not make an *Alford* plea. Nonetheless, considering all the circumstances, we conclude there was sufficient evidence to support the trial court's implied finding Sample's lack of objection to or response to the prosecution's factual recital was an adoptive admission.

---

[8] In *North Carolina v. Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160], the United States Supreme Court held a court may constitutionally accept a guilty plea from a defendant who claims innocence as long as there is a factual basis for the plea. (*Id.* at pp. 37–38; see also *In re Alvernaz* (1992) 2 Cal.4th 924, 940, fn. 9 [8 Cal.Rptr.2d 713, 830 P.2d 747].)

[9] In dictum, the *Roberts* court also expressed doubt that a defendant's failure to respond to a prosecution's factual recital at a change of plea hearing could ever be an adoptive admission. (*Roberts, supra,* 195 Cal.App.4th at p. 1123.) The court's doubt stemmed from *People v. French* (2008) 43 Cal.4th 36 [73 Cal.Rptr.3d 605, 178 P.3d 1100]. In *French,* the defendant pleaded no contest to several offenses under the terms of a plea agreement that contained a stipulated maximum sentence. (*French, supra,* at p. 42.) The trial court imposed an aggregate sentence equal to the stipulated maximum sentence. The aggregate sentence included an upper term sentence for one of the offenses. (*Id.* at p. 43.) The defendant challenged the upper term sentence on the ground it violated his Sixth Amendment right to a jury trial. (*French,* at p. 40.) In opposition, the People argued the defendant's stipulation to the factual basis for the plea supplied by the prosecution at the change of plea hearing constituted an admission to a particular aggravating circumstance. (*Id.* at p. 50.) The Supreme Court disagreed, concluding the prosecution's factual basis did not actually contain facts supporting the particular aggravating circumstance. (*Id.* at p. 51.) Further, the court noted that, rather than admitting the truth of the facts recited by the prosecutor, defense counsel merely agreed the prosecutor could produce witnesses to testify to the facts recited. Under such circumstances, the court concluded the stipulation to the factual basis could not reasonably be construed as an admission. (*Ibid.*) We do not interpret *French* as categorically excluding the possibility a defendant could make an adoptive admission by failing to object to or respond to a factual basis supplied by the prosecution at a change of plea hearing. Rather, we discern from *French* the need for a case-specific inquiry, which is consistent with our approach here.

■ Generally, both parties to a plea agreement are expected to pay careful attention during a plea colloquy to ensure the formalities necessary for its validity are met and the record accurately reflects the parties' agreement. The possibility of future consequences, including the application of habitual offender statutes, further necessitates the parties ensure the record accurately reflects the factual basis for the plea. Therefore, except in circumstances analogous to those presented in *Roberts*, a defendant would normally and reasonably be expected to object to or respond to the prosecution's factual recital if the factual recital did not accurately reflect the circumstances of the offense to which the defendant was pleading guilty or no contest.

Moreover, here the circumstances of the offense recited by the prosecution were uncomplicated—Sample entered a person's home and took the person's wallet. If he had not entered a home or was disputing this point, it would not have been difficult for him or his counsel to qualify the recital to reflect the discrepancy.

Further, immediately after hearing the prosecution's recital and accepting Sample's plea, the Florida court provided both defense counsel and Sample opportunities to speak. While the court's focus at that point had naturally turned to sentencing as the next step in the plea process, nothing in the record suggests the court would have precluded defense counsel or the defendant from using the opportunity to comment on the prosecution's recital if they desired to do so. Rather, it appears from the record that anything done previously in the proceedings could still be clarified, modified, or even undone if necessary. The fact that both defense counsel and Sample used their opportunities to address the court for other purposes—defense counsel to alert the court to Sample's desire for work release and Sample to express remorse[10]—inferably indicates neither defense nor Sample had any quibbles with the prosecution's recital. Accordingly, we conclude there is sufficient evidence to support an implied finding the prosecutor's recital fell within the hearsay exception for adoptive admission and the trial court in this case properly considered the prosecution's recital in determining whether Sample's prior Florida conviction qualified as a prior strike conviction under California law.

---

[10] The transcript of the Florida court proceedings does not contain all of Sample's remarks to the court, as the transcriber found some of the remarks unintelligible. It appears Sample's expression of remorse included an acceptance of responsibility. The *Roberts* court concluded a defendant's postplea statements may not be used as admissions to prove a prior strike conviction because once a defendant's plea is accepted, the defendant is free to speak or not speak without further consequence. (*Roberts, supra*, 195 Cal.App.4th at p. 1127.) The instant case is arguably distinguishable from *Roberts* because the Florida court accepted Sample's plea, provided him and his counsel an opportunity to speak, then accepted Sample's plea again and formally adjudicated him guilty. Under such circumstances, we cannot conclude Sample's remarks were necessarily inconsequential. In any event, our analysis does not rely on his apparent acceptance of responsibility.

## DISPOSITION

The judgment is reversed as to count 21 (possession of child pornography on the removable hard drive).[11] The trial court is directed to amend the abstract of judgment accordingly and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

Haller, J., and Irion, J., concurred.

---

[11] Our rationale for concluding Sample could only have been convicted of two of the three possession of child pornography counts necessitates reversal of either the count related to the computer found in Sample's backpack or the count related to the removable hard drive, which was found in the same location. Since we cannot determine from the record before us which possession count relates to the computer found in Sample's backpack and which relates to the computer found in Sample's storage shed, we are reversing the count related to the removable hard drive.