Filed 5/13/14  P. v. Ruelas CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048260 |
| v. | (Super. Ct. No. 12WF2206) |
| RALPH ANTHONY RUELAS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Harry Zimmerman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

A jury found defendant Ralph Anthony Ruelas guilty of first degree burglary. The court sentenced him to 13 years in state prison. Substantial evidence supports his conviction for burglary. The court had good cause to trail the trial. The restitution fine was authorized by statute. Finding no error, we affirm.

I

FACTS

*Pretrial proceedings*

Defendant was arraigned on August 17, 2012. At the conclusion of the preliminary hearing, it appeared to the court that a felony had been committed and that there was sufficient and probable cause to believe defendant committed the felony. The information was filed on September 27, 2012. The matter was set for a pretrial conference on October 18. On that date, the minute order states: "Defendant waives statutory time for Jury Trial." January 3, 2013 was the date set for jury trial.

On January 3, defendant's jury trial was trailed to January 10 "as day 7 of 10." On January 10, a Thursday, when the case was called, the People answered not ready for trial and Deputy Public Defender Jon Feldon answered ready. Defendant's jury trial was trailed to January 14 "as day 10 of 10."

On January 14, 2013, Feldon informed the Hon. Gregg L. Prickett as follows: "I would be ready except for that I was sent out on another trial and currently engaged. [¶] Mr. Ruelas informed me that he doesn't want to have to continue his matter and he's requesting a *Marsden* [*People v. Marsden* (1970) 2 Cal.3d 118] hearing." The court transferred defendant's trial to the courtroom of the Hon. Daniel J. Didier where the deputy public defender was engaged. That same morning, Judge Didier ordered the courtroom cleared and conducted a hearing pursuant to *People v. Marsden*, *supra*, 2 Cal.3d 118. The motion was denied.

Immediately after the conclusion of the *Marsden* hearing, defendant spewed a string of profanities, directing several particularly offensive remarks to Feldon

2

specifically. The court stated the case was there for trial, and defendant said: "F. . . you." Judge Didier told him: "Mr. Ruelas, you know, I'm trying to do the best I can to make sure I don't . . . . [¶] . . . [¶] I'm trying to give you a fair trial and to deal with you fairly." Defendant continued with his profanities.

Feldon told the court: "As I said in C-5, I would be ready on this case, except I'm engaged in another trial in this courtroom.[1] [¶] Unfortunately, I can't answer ready on this case." The court inquired whether anyone else from counsel's office could step in to try the case, and the deputy public defender responded: "Unfortunately, your Honor, the lawyers in my office are not fungible. We can't just replace each other. [¶] I'm familiar with this case. I'm prepared to go to trial on this case. And it would take another lawyer a significant amount of time to come to speed on it. [¶] I can't just hand it off at the last minute."

The court explored the notion of appointing conflict counsel to represent defendant, but dismissed that idea after concluding it would take any new lawyer some time to get prepared for trial. Seemingly while reviewing defendant's file, the court stated: "Mr. Ruelas does have, apparently, a strike prior, five-year prior and a number of prison priors; so this is a serious case. [¶] Tentatively, the court would find good cause to continue the case till it can be tried. And we would trail it behind the case, the three-day case that the court is ready to begin with Mr. Feldon. [¶] I suppose there's one other option. Mr. Ruelas could represent himself. [¶] Do you want to represent yourself?"

Defendant responded: "F. . . you. If we're going to sit here I'm going to sit here regardless. F. . . you. I'm going to do the time, but I'm not going to keep giving them the f. . . time to do this [continued profanities] that they're doing." The court said:

_____

[1]         We note Feldon answered ready in this matter on January 10, and, also answered ready in Judge Didier's court on another matter the same day.

"Well, we're looking at three days until we can start your trial." The court then ruled: "We'll find good cause to continue the case and trail behind the . . . case that the court is presently engaged in."

On January 17, Judge Prickett called defendant's case. Feldon answered ready. When the court indicated it was ready to send the case out for trial, the deputy public defender said: "At this point, I'd like to move for a dismissal in this case. Mr. Ruelas had — his day 10 was Monday [of this week] [¶] . . . [¶] On that day, I had — on Thursday of the previous week, I had answered ready for a different jury trial. . . . [¶] . . . [¶] On Monday, Mr. Ruelas' case was sent from C5 to C50. And Judge Didier conducted a *Marsden* motion, which was not granted. Mr. Ruelas expressed to the court that he did not want to continue his case any further. He wanted to go to trial. I indicated to the court that I was ready on either case. The court elected to proceed with the trial we had already done the limine motions on, . . . and trailed Mr. Ruelas past day 10 to Thursday . . . which is today. Past his — past the drop dead date."[2]

The deputy public defender continued: "I'm saying, your Honor, that the court could have gone — could have put . . . case to the side and proceeded on Mr. Ruelas' case, and thereby not violated Mr. Ruelas' rights."[3]

---

[2]      Despite having specifically told Judge Didier on January 14 that he could not answer ready on defendant's case, Feldon told Judge Prickett on January 17 that he did answer ready on the instant case in Judge Didier's court.

[3]      In reviewing the January 14 transcript from proceedings in Judge Didier's court, we do not see any indication Feldon requested, suggested or even hinted that Judge Didier set the . . . case to the side and try defendant's case instead. Yet, on January 17, Feldon told Judge Prickett: "Your Honor, in that particular situation I would have wanted the court . . . to have proceeded on the day 10 case. The other case had more time before the statutory period had passed." When Judge Prickett attempted to tie Feldon down with regard to just what happened, Feldon told Judge Prickett: "I told Judge Didier that I was prepared to proceed on either case," a statement which does not appear in the transcript of the proceedings in Judge Didier's court.

4

After hearing more from the deputy public defender, the court stated: "The People have the remedy, and so now this becomes a decision for the People to make. We can — the People have the option of dismissing and refiling. That means the defendant remains in custody during this time period, and hence, this ends up not becoming an appellate issue, or the people can continue to assert their right, and then I will rule on this." The deputy district attorney responded that the People remained ready.

The court, after hearing significant argument from deputy public defenders, stated: "Defense motion to dismiss is denied. Matter is assigned to Judge Conley forthwith. Counsel are ordered to go to Judge Conley's court forthwith."

The deputy public defender requested the court to order a transcript of the proceedings, which the court did. Counsel informed the court the public defender's office would be filing a writ and requested a stay of the trial for "at least long enough to file a writ." Counsel said the writ would be filed by the end of the day, and the court stated: "Well, but then there's tomorrow, and we don't do trials on Friday, right? So, see what I'm saying? And then Monday is a holiday." The court indicated it would grant the stay but needed to have a time waiver. The deputy public defender stated he did not want to have his client waive time, so he was ready to proceed, but then asked for a stay until 1:30 p.m. that same day, which the court granted.

That afternoon, the Hon. John D. Conley called the matter. The deputy public defender informed the court a writ petition was being prepared, and that he wanted to "start with 402's, and then we agree that we'd be engaged in trial. But we'd like to hold off on swearing a jury in until Tuesday." The court asked defendant: "And you agree with that, Mr. Ruelas?" Defendant responded: "Yes, I do." The deputy district attorney stated he agreed and also that "a venire is sworn in, that that established substantial activities as relates to the trial." At that point, the court heard pretrial motions.

On Tuesday, January 22, 2013, the deputy public defender informed the court this court had not issued a stay. Voir dire commenced.

*Trial*

Defendant performed odd jobs at the home of a woman who lived across from defendant's mother. Defendant was in and out of the neighbor's home every other day for about six months, but he was not allowed in the bedroom. (Hereafter, the neighbor will be called the victim.)

On Friday, August 12, 2012 at about 4:00 in the afternoon, the victim left her home, and she returned on Sunday, August 14 at about 6:30 or 7:00 in the evening. While she was gone, defendant was hired to do some front landscaping work at the victim's house. She locked "everything," and did not give defendant a key to her home before she left. But she told him she would leave a key to the shed in the drawer of a table on her patio.

When she returned on Sunday evening, the victim noticed a cigarette in the carport and noticed the family room blinds weren't straight. When she walked inside her home, the first thing she noticed was the television was gone. In her bedroom, all the drawers were open and everything was gone. A window and its frame were damaged. Two of the three televisions, the VCR, a portable DVD player and a stereo were gone. Tools were missing from the shed, but the shed was locked and the key to the shed was in the table. The victim described many other items that were taken as well.

About three weeks after the burglary, the victim was in defendant's mother's home and saw what she believed were some of her belongings. She specifically recognized one of her possessions "on her coffee table" there. It was the ornate seashell her mother brought back after visiting Hawaii for the first time. She took the shell to her own house and told the investigator about it.

An investigator with the Orange County Sheriff's Department identified defendant as a suspect after being given the seashell. The investigator questioned defendant about the seashell and he said he got it from Calvary Chapel Church on Golden West. He said it was in a bag of clothing they give to needy people. He said he gave the seashell as well as other items he found in the bag to his mother.

During the interview of defendant, the investigator told defendant his fingerprints were found all over the victim's bedroom. The investigator testified that, in fact, none of defendant's fingerprints had been found in the interior of the victim's home, and described the questioning technique as a ruse. When told of the fingerprints found, according to the investigator, defendant told her that out of curiosity "he had gone through her drawers, her jewelry box, her closets, and that's why his fingerprints would be found there."

A Calvary Chapel employee testified. She was asked whether Calvary Chapel gives out items such as trinkets or house wares, and responded: "Strictly clothes, boots, blankets, towels, that kind of thing."

II

DISCUSSION

Defendant contends the evidence is insufficient to support his conviction for first degree burglary "because there was not even slight corroborating evidence to Ruelas' possession of stolen property that the jury could use to infer his guilt of burglary." He also contends the court abused its discretion when it found good cause to continue the trial and "deprived Ruelas of his right to a speedy trial under [Penal Code] section 1382." (All further statutory references are to the Penal Code.) Additionally, defendant argues the court erred in its restitution order. Lastly, defendant argues the trial court erred in imposing a restitution fine.

7

*Continuance of Trial*

A trial court has broad discretion to determine whether good cause exists to continue a trial. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) "Continuances shall be granted only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (§ 1050, subd. (e).) A decision to grant a continuance under section 1382 is reviewed for an abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 852.)

Defendant contends he was prejudiced when the court delayed his trial for three days because, had the prosecution's case been dismissed under section 1382, "that would have created a statutory bar to a new prosecution had the motion to dismiss been granted."

"(a) The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: [¶] . . . [¶] (2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information. . . . However, an action shall not be dismissed under this paragraph if either of the following circumstances exists: [¶] . . . [¶] (B) The defendant requests or consents to the setting of a trial date beyond the 60-day period. In the absence of an express general time waiver from the defendant, or upon the withdrawal of a general time waiver, the court shall set a trial date. Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (§ 1382)

"Section 1382, which interprets the state constitutional right to a speedy trial (see Cal. Const., art. I, § 15), provides that absent a showing of good cause, a defendant accused of a felony is entitled to a dismissal of the charges against him if he is not brought to trial within 60 days of the filing of the information." (*People v. Johnson* (1980) 26 Cal.3d 557, 561.) "We summarize briefly our conclusions respecting the

8

speedy trial issue.  We conclude, first, that when a client expressly objects to waiver of his right to a speedy trial under section 1382, counsel may not waive  that right to resolve a calendar conflict when counsel acts not for the benefit of the client before the court but to accommodate counsel's other clients.  Secondly, we conclude that, at least in the case of an incarcerated defendant, the asserted inability of the public defender to try such a defendant's case within the statutory period because of conflicting obligations to other clients does not constitute good cause to avoid dismissal of the charges.  Finally, we reaffirm the holding of *People v. Wilson* (1963) 60 Cal.2d 139, that a defendant seeking post-conviction review of denial of a speedy trial must prove prejudice flowing from the delay of trial; we affirm here because defendant proved no prejudice."  (*Id.*, pp. 561-562.)

"'The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. . . .  It is therefore recognized that both the people and the defendant have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings to the greatest degree that is consistent with the ends of justice. . . . [¶] . . . [¶] Continuances shall be granted only upon a showing of good cause.  The convenience of the parties is not in and of itself good cause. . . .'  [Citation.]"  (*People v. Johnson*, *supra*, 26 Cal.3d at pp. 562-563.)

A number of factors are relevant to a determination of good cause under section 1382:  "'(1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay.'"  (*Smith v. Superior Court* (2012) 54 Cal.4th 592, 598.

In the instant matter, the court tried mightily to calm defendant down and find out what he wanted to do.  In reading the transcript, while we cannot say for sure, it does appear defendant was frustrated and upset with the result of his unsuccessful *Marsden* motion and was not willing to discuss the continuance issue.  Here, where it

9

does not appear the deputy public defender was completely candid with the court, defendant had previously waived time, the court had already started another trial with the same public defender, the court would be able to get defendant's case to trial in less time than it would have taken another appointed lawyer to prepare to defend defendant, and defendant's prejudice argument is unpersuasive, we conclude there was good cause for the court to continue the trial. The present situation does not appear to be a result of the state not providing a sufficient number of public defenders. Under the unique circumstances we find in this record, we cannot conclude either that defendant was entitled to a dismissal under section 1382 or that the court abused its discretion.

*Sufficiency of Evidence*

In addressing challenges to the sufficiency of evidence, "the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]"' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.)

10

The elements of first degree burglary are: "(1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony." (*People v. Sample* (2011) 200 Cal.App.4th 1253, 1261.)

Here there is significant circumstantial evidence that defendant entered the victim's home with intent to commit a theft. He knew the victim would be away and he had access to the exterior to do outdoor projects. In addition to the evidence defendant gave his mother at least one of the items stolen from the victim's home, he had the key to the victim's shed and some of the stolen items that were taken from the shed. The shed was locked and the key returned to the table. Additionally, defendant's explanation to the investigator's ruse about fingerprints in the bedroom demonstrated a consciousness of guilt. Under these circumstances, we conclude sufficient evidence supports defendant's conviction for first degree burglary.

*Restitution Fine*

The trial court imposed a restitution fine of $280 pursuant to section 1202.4, subdivision (b)(1). In 2012 the subdivision was amended to provide a minimum restitution fine of $240. (Stats. 2012, ch. 868 § 3.) Defendant argues: "Because it appears the trial court's intent was to impose the minimum fine, and the crime was committed in 2011, the restitution fine should have been $200."

In 2011, section 1202.4, subdivision (b)(1) provided that a restitution fine was to be set at the discretion of the court, "but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony." (Former § 1202.4, subd. (b)(1); Stats. 2007, ch. 302, § 14.) We see nothing in the record to indicate the court intended to impose only the minimum statutory amount, and will not speculate that the court so intended.

### III

### DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.