Filed 10/24/14  P. v. Rubio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C074476 |
| Plaintiff and Respondent, | (Super. Ct. No. 13NCR09625) |
| v. | |
| MARCELO RUBIO, JR., | |
| Defendant and Appellant. | |

A jury found defendant Marcelo Rubio, Jr., guilty of first degree burglary (Pen. Code, § 459)[1] and misdemeanor possession of burglary tools (§ 466).  Defendant admitted serving four prior terms in prison.  The trial court subsequently sentenced him to an aggregate term of 10 years in state prison.

---

[1] Further undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends that there was insufficient evidence to sustain either of his convictions, adding that the trial court erred in denying his motion for a judgment of acquittal on the burglary charge. Defendant also asks for remand to clarify a fine. We will affirm and order correction of the abstract of judgment.

I

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, Mindy Perrault was renting a home on property which included a main residence and a detached structure, described as a shed or a garage that had been converted into living quarters. On February 28, 2013, Perrault admitted herself to a mental health facility.

On the morning of March 3, 2013, Perrault's neighbor, Caryol Grundy, heard a noise; she looked out her window and saw defendant and Tanya LaBlue (both with bicycles) walking "around and around" Perrault's home. As she watched, Grundy saw defendant take a chair over to the shed, access a window using the chair, and crawl into the shed. Grundy knew Perrault was not home; she called 911. Grundy then saw LaBlue walk to the street and back to the shed; defendant had opened the shed door and LaBlue walked into the shed. Although Grundy did not see either defendant or LaBlue leave the shed, there was a door into the main residence that was between the main residence and the shed, which Grundy could not see from her window.

Officers Grant Carmon and Sevren Lemstrom responded "immediately" to Grundy's 911 call. When they arrived at Perrault's home, Carmon approached the main residence and heard a man say: " 'Get out of here. It's the cops.' " Carmon then went into the main residence through a door that was already open. Inside, Carmon saw defendant standing in the kitchen area, in front of a fish tank, with a can of fish food in his hand. Defendant had the fish food tipped over the tank, as though he were feeding the fish, but the lid was still on the can. Moments later, LaBlue walked into the same room. Carmon detained them both and took them outside.

Once outside, defendant told Carmon "he was there to check on the residence because a friend of his who knows the owner, by the name of Shawn, had asked him to come check on the house."[2]  Defendant also told Carmon that Perrault had given him permission to be in her home.  Carmon told defendant he knew Perrault was in a mental health facility so she was not available to give defendant permission to be on the property.  Defendant responded:  " 'Well, previously I had permission.' "  LaBlue responded similarly to Carmon's questions.

Carmon then asked defendant how he got into Perrault's residence.  Defendant said the door was unlocked.  Carmon looked at that door (the same door that was open when Carmon and Lemstrom arrived) and saw scrape marks on the "metal latch area."  The scrape marks appeared to be "fresh" because they were not tarnished but "metallic and shiny."  Carmon then arrested defendant and LaBlue.  Attached to defendant's bicycle was a fanny pack with several tools inside including "numerous screw drivers, vise grips, some pliers, small little screw drivers, [and] a crescent wrench."  Carmon had previously seen tools like these used to commit burglary; defendant acknowledged the tools were his.  Officer Lemstrom later talked to Perrault, who acknowledged there were new pry marks on her door when she arrived home from the facility.

Defendant was subsequently charged with first degree residential burglary (§ 459), conspiracy to commit a felony (§ 182, subd. (a)(5)), and misdemeanor possession of burglary tools (§ 466).  The People further alleged defendant served four prior prison terms within the meaning of section 667.5, subdivision (b).  Defendant pleaded not guilty to the charges but admitted the prior prison term allegations.

At trial, Perrault testified that while she had previously given defendant and LaBlue permission to be in her home when she was gone, she had not given them

_____

[2]  The actual owner had a brother whose first name was Shawn.

permission this time. Additionally, when Perrault returned home it appeared her things had been "gone through," though she could not be sure, and some "personal underclothing" and "metric tools" were missing from her bedroom.

Perrault said her home had been burglarized in the past, and the burglars had "scratched up" her door. She also contradicted her prior statement to Officer Lemstrom, testifying that she did not notice any new pry marks on the door to her residence when she returned home. Indeed, she did not remember Lemstrom asking her about pry marks on the door.

Following the admission of evidence, defendant moved for a directed verdict on the burglary and conspiracy charges. The trial court granted the motion with regard to the conspiracy charge. The two remaining charges were submitted to the jury; the jury found defendant guilty of both. The trial court later sentenced defendant to an aggregate term of 10 years in state prison, ordered him to pay various fines and fees, and awarded him 273 days of custody credit. Defendant appeals.

II

**DISCUSSION**

On appeal, defendant contends insufficient evidence supports his convictions for residential burglary and possession of burglary tools with the intent to commit a residential burglary.

In addressing defendant's claim, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We accord due deference to the verdict and will not substitute our conclusions for those of the trier of fact. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) A conviction will not be reversed for insufficient evidence unless it appears "that upon no hypothesis whatever is there sufficient

4

substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

A. *Burglary*

First degree burglary under section 459 requires entry into a structure currently being used for dwelling purposes, concurrent with possession of the intent to commit a theft or other felony. (*People v. Sample* (2011) 200 Cal.App.4th 1253, 1261 (*Sample*).) Thus, "to constitute burglary, the defendant must intend to commit the theft or felony at the time of entry. [Citation.]" (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540-541.) However, the requisite intent " ' "is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence." [Citation.]' [Citation.]" (*People v. Holt* (1997) 15 Cal.4th 619, 669.)

Here, there is no dispute that Perrault's residence was a "structure currently being used for dwelling purposes." (*Sample, supra*, 200 Cal.App.4th 1261.) Defendant argues that there was insufficient evidence he entered with the intent to steal because his conviction was based on circumstantial evidence.

Reviewing the evidence in a light most favorable to the judgment, the jury heard that defendant and LaBlue went to Perrault's home carrying burglary tools. Once there, they went "around and around" the property. Then defendant stood on a chair to crawl through a window to get into the shed, and pried open a door to get into the house. When the police arrived (almost immediately), defendant yelled out to LaBlue: " 'Get out of here. It's the cops.' " Defendant then posed himself as if he were feeding Perrault's fish, while LaBlue walked in from another room. When questioned by the police, defendant's answers changed after he realized the police knew Perrault was in the hospital.

Defendant now argues each piece of evidence can be more reasonably explained in a manner that would support his innocence. In essence, he asks us to re-evaluate the evidence submitted at trial and substitute our view for the jury's, which we cannot do. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Though this evidence is largely

5

circumstantial, and far from overwhelming, it sufficiently supports the jury's verdict. Accordingly, the trial court correctly denied defendant's motion for acquittal on the burglary charge.

B. *Possession of Burglary Tools with the Intent to Commit a Burglary*

Defendant next contends there was insufficient evidence for a reasonable jury to convict him of possession of burglary tools. To convict defendant on this charge, the People were required to establish: "(1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purpose of breaking or entering." (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084-1085.)

It is undisputed that inside the pack attached to defendant's bicycle were screwdrivers, vise grip pliers, other pliers, and a crescent wrench. Each of those tools comes within the purview of the statute. (§ 466 [burglary tools include vise grip pliers, screwdrivers, and any other "instrument or tool" intended to be used for breaking and entering].) It also is undisputed that those tools belonged to defendant. Thus the only remaining issue is whether there was sufficient evidence defendant possessed those tools with the intent to use them to commit a felony.

As discussed above, intent is " 'rarely susceptible of direct proof' " and instead " 'must usually be inferred from all the facts and circumstances disclosed by the evidence.' " (*People v. Falck* (1997) 52 Cal.App.4th 287, 299.) Here, viewing the evidence in a light most favorable to the judgment, Perrault had not given defendant permission to go inside her shed or her home on this occasion. Additionally, there were fresh pry marks on the metal latch of the door into Perrault's main residence. That door was open when the police arrived. The evidence also established that after LaBlue went inside the shed, but before the police arrived, she walked back out to the street. It was reasonable for the jury to infer the tools were used to pry open the door into the main residence, then returned to the pack on defendant's bicycle by LaBlue.

6

"An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.) We cannot say here that on no hypothesis is the evidence sufficient. Thus we conclude that there is sufficient circumstantial evidence to infer the requisite intent.

C. *The $200 Fine*

Defendant contends the trial court "may have erred" in imposing a $200 "base fine" pursuant to "sections 18 and 19 of the Penal Code." At a minimum, he contends, the record is ambiguous because the abstract of judgment contradicts the reporter's transcript and indicates the fine was imposed pursuant to section 1202.5. Defendant asks for remand.

First, " '[r]endition of judgment is an oral pronouncement.' Entering the judgment in the minutes being a clerical function [citation], a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error. Nor is the abstract of judgment controlling. 'The abstract of judgment is not the judgment of conviction. By its very nature, definition and terms [citation] it cannot add to or modify the judgment which it purports to digest or summarize.' [Citation.]" (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) We thus presume that identifying section 1202.5 as the statutory basis for the $200 "base fine" in the abstract of judgment was a clerical error, an error which we will order corrected.

Second, as noted by defendant, the fine was authorized under section 19: "Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars ($1,000), or by

7

both." Defendant was convicted of a misdemeanor (possession of burglary tools), and the $200 fine is within the statutory limits. The fine was, therefore, authorized. We presume the trial court knew the law and applied it correctly. (Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913; *People v. Adanandus* (2007) 157 Cal.App.4th 496, 503.) Only correction of the abstract is required.

III

**DISPOSITION**

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to identify Penal Code section 19 as the statutory basis for the $200 fine and deliver a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.


           DUARTE           , J.


We concur:


        BLEASE           , Acting P. J.


        ROBIE           , J.