Filed 7/12/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B266497 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA082595) |
| v. | |
| MICHAEL G. McCAW, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cathryn F. Brougham, Judge. Affirmed in part, reversed in part, and remanded.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

_____

In 1999, defendant Michael Garrett McCaw entered into a plea bargain in New York in which he pleaded guilty to attempted third degree robbery. In 2011, defendant was convicted of attempted manslaughter in California. The trial court found that defendant's 1999 New York conviction for attempted third degree robbery qualified as a serious felony and a strike under California law, and enhanced defendant's sentence accordingly. We have twice reversed the recidivism findings. In a third trial of the recidivism allegations, the court determined that the plea colloquy in connection with the New York conviction demonstrated that the New York offense qualified as a serious felony and strike under California law.

We again reverse. It is undisputed that the elements of attempted third degree robbery under New York law do not correspond to the elements of robbery as defined in California law. The trial court's finding in the third recidivism trial that the conduct underlying defendant's New York conviction would constitute attempted robbery in California constitutes the type of judicial fact-finding prohibited under the Supreme Court's interpretation of the Sixth Amendment in *Descamps v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2276] (*Descamps*). After *Descamps*, the trial court "may not under the Sixth Amendment '"make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea[]"'. . . .' [Citation.]" (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1207-1208 (*Saez*).) "[W]hen a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." (*Descamps*, *supra*, at p. 2288.)

## PROCEEDURAL BACKGROUND

Defendant was convicted by jury in California in 2011 of attempted voluntary

manslaughter (Pen. Code, §§ 192, 664).[1]  The jury also found true allegations that defendant used a deadly weapon (§ 12022, subd. (b)(1)) and inflicted great bodily injury (§ 12022.7, subd. (a)).  Following a bench trial, the trial court found that defendant's 1999 New York conviction for attempted third degree robbery was a strike under the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior serious felony conviction (§ 667, subd. (a)).[2]

The trial court sentenced defendant to 21 years in state prison.  The sentence included, inter alia, a doubling of the term for attempted voluntary manslaughter due to the strike prior conviction, and a five-year enhancement for the serious felony.

Defendant argued in his first appeal that the evidence was insufficient to support the trial court's initial findings that his 1999 New York conviction for third degree attempted robbery was a serious felony and a strike under California law.  The Attorney General conceded the point, because robbery under California law requires that property be "taken from the other person or (his/her) immediate presence" (CALCRIM No. 1600), whereas under New York law it is not required that the person robbed be in equally close physical proximity to the stolen property.  We held the evidence was insufficient to support the findings, reversed the recidivism findings, and remanded for a limited retrial of the prior conviction allegations.

The prosecution offered additional evidence at the second trial on the recidivism allegations.  Among the items presented was a document signed by Michele Jaworski, which stated that on or about November 3, 1997, defendant grabbed her purse and attempted to take it from her.  The trial court found that the document containing Jaworski's statement appeared to be "in the form of a charging document" with the signed affidavit of the victim.  The trial court again found the prior conviction allegations true.

---

[1] Statutory references are to the Penal Code, unless otherwise indicated.

[2] The trial court also found defendant had served a prior prison term (§ 667.5, subd. (b)), which was unrelated to the New York conviction.

3

In his second appeal to this court, defendant again contended there was insufficient evidence that his New York attempted third degree robbery conviction qualified as a serious felony or a strike for purposes of the California sentencing enhancements. He argued that *Descamps*, *supra*, 133 S.Ct. 2276, decided subsequent to our remand, prohibited the trial court from examination of the entire record of conviction, repudiating our Supreme Court's decision in *People v. Guerrero* (1988) 44 Cal.3d 343, and its progeny. Alternatively, defendant asserted that even under current California law, the evidence was insufficient to support the sentence enhancements. The Attorney General argued California's jurisprudence was unaffected by *Descamps*, and that the evidence was sufficient under California law. We agreed with defendant that the evidence was insufficient. We explained that Jaworski's statement appeared to be the basis for reference of the case to the grand jury, which ultimately indicted defendant for a variety of offenses including attempted first degree robbery, to which defendant had pleaded not guilty. The case was resolved by guilty plea to attempted third degree robbery. Jaworski's statement was insufficient to demonstrate the basis for defendant's New York conviction because it did not reliably reflect the facts of the offense to which defendant pleaded guilty. We again reversed the recidivism findings, and remanded for a limited retrial of the prior conviction allegations. Because we were able to resolve the issue on the basis of the insufficiency of the evidence, we did not consider the impact of *Descamps'* Sixth Amendment analysis on our state's law.

At the third court trial on the recidivism allegations, the prosecution for the first time presented the transcripts of defendant's change of plea and sentencing in the New York case. The New York indictment charged defendant in the first two counts with attempted first degree robbery, and in the third count with attempted second degree robbery. He was charged in the fourth and fifth counts with criminal possession of a weapon in the third degree. The discussion of the case settlement in the New York reporter's transcript indicates defendant would plead guilty to attempted third degree robbery "[u]nder the third count" and possession of a weapon under the fifth count. The count in dispute in this appeal—the third count—was resolved with a plea to a lesser

4

offense than the charged attempted second degree robbery. The plea colloquy reveals the following:

"The Court: You're charged with an incident that occurred on November 3rd, 1997. It's alleged that on that date . . . you were engaged in criminal conduct. It's alleged you attempted to forcibly steal property from the person of Michele Jaworski, and furthermore in the course of the matter you did, and subsequent to that, you did possess a loaded firearm and that the firearm was possessed at a location not your home or place of business, that being an operable and loaded firearm.

"With respect to the allegation you forcibly stole property from another person armed with a loaded and operable firearm, do you now enter a plea of guilty?

"The Defendant: Yes.

"The Court: Do you hereby acknowledge the criminal acts alleged were, in fact, committed by you?

"The Defendant: Yes.

"The Court: Anybody forcing you to make the admissions?

"The Defendant: No.

"The Court: Are you telling me the truth when you say you are guilty of these two crimes, attempted robbery in the third degree and criminal possession of a weapon in the third degree, and do you now freely acknowledge and admit your guilt of those offenses and tell me the truth in acknowledging your guilt?

"The Defendant: Yes."

Based on this language in the plea colloquy, the trial court for the third time found the recidivism allegations true. It explained that under current case law, the only issue to resolve was whether defendant had admitted to attempting to take property from the victim's person, and the plea colloquy demonstrated he had done so. The court again sentenced defendant to 21 years in state prison.

Defendant timely appealed.

5

## DISCUSSION

Defendant once more contends insufficient evidence supports the finding that his 1999 conviction in New York for attempted third degree robbery was a prior serious felony conviction and a prior conviction under the three strikes law. He maintains the California Supreme Court's decision in *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), which permits sentencing courts to review the record of the prior criminal proceeding to determine the nature of the prior conviction, is no longer viable following *Descamps*, in which the United States Supreme Court held that the Sixth Amendment prohibits courts from examining evidence beyond the statutory elements of the crime in determining the nature of a prior conviction if the statute defining the crime is not divisible, leaving all fact-finding to the jury. Defendant asserts attempted third degree robbery under New York law is not divisible—a point not challenged by the Attorney General. Defendant argues that because the New York statute is indivisible, the court violated his Sixth Amendment rights by considering the plea colloquy to determine the nature of his prior conviction.

The Attorney General responds that defendant forfeited the issue on appeal by failing to object to admission of the plea colloquy on the basis that it violated his Sixth Amendment rights at the second retrial.[3] Alternatively, the Attorney General argues defendant's claim is without merit because this court is bound to follow *McGee*, *supra*, 38 Cal.4th 682, which was not superseded by *Descamps*.

### *Descamps*

*Descamps*, *supra*, 133 S.Ct. 2276, discussed the Sixth Amendment's limitations

---

[3] We reject the forfeiture contention. Defendant's challenge to the sufficiency of the evidence, founded in a violation of the Sixth Amendment, is cognizable on appeal without objection to the evidence in the trial court. (See *People v. Trujillo* (2010) 181 Cal.App.4th 1344, 1350 fn. 3 ["[A]n argument that the evidence is insufficient to support a verdict is never waived"].)

on judicial fact-finding to prove the truth of a prior conviction. Prior to *Descamps*, the court held in *Apprendi v. New Jersey* (2000) 530 U.S. 466, at page 490 (*Apprendi*), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The *Descamps* court considered whether a guilty plea transcript could be considered as proof of a qualifying prior conviction under 18 U.S.C. § 924, subdivision (e), commonly referred to as the Armed Career Criminal Act (ACCA).

Descamps had pleaded guilty to burglary in California. As interpreted by the Supreme Court, breaking and entering was an element of the crime of "generic burglary" under the ACCA. The California statute under which Descamps had been convicted defined burglary more broadly than the federal statute, including crimes like shoplifting, in which breaking and entering was not an element. The plea transcript reflected that defendant failed to object when the prosecutor stated the crime "'"involve[d] the breaking and entering of a grocery store."'" (*Descamps*, *supra*, 133 S.Ct. at p. 2282.) The district court applied the "modified categorical approach," and, relying on the evidence in the plea transcript, concluded that the prior conviction was a qualifying prior conviction under the ACCA. The Ninth Circuit affirmed. (*Descamps*, *supra*, at p. 2282.)

The Supreme Court framed the issue as follows: "To determine whether a past conviction is for [a crime that qualifies as a predicate under the ACCA], courts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense. [¶] We have previously approved a variant of this method—labeled (not very inventively) the 'modified categorical approach'—when a prior conviction is for violating a so-called 'divisible statute.' That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified

7

categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime. [¶] This case presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an 'indivisible' statute—*i.e.,* one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense." (*Descamps*, *supra*, 133 S.Ct. at p. 2281.)

The *Descamps* court reversed the Ninth Circuit's decision, explaining: "[Affirming the Ninth Circuit's decision] would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test. Because that result would contravene our prior decisions and the principles underlying them, we hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." (*Descamps*, *supra*, 133 S.Ct. at pp. 2281-2282.)

Throughout its decision, the *Descamps* court emphasized that sentencing courts could apply the modified categorical approach only when the statute in question was divisible. "[T]he modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under § 459 into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense." (*Descamps*, *supra*, 133 S.Ct. at p. 2283.) The modified categorical approach "merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it

8

preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.' [Citation.] If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." (*Id*. at p. 2285, fn. omitted.)

The Supreme Court went on to discuss the three grounds underlying its establishment of the "elements-centric" "'formal categorical approach'" in previous cases: 1) the text and history of the ACCA; 2) Sixth Amendment concerns; and 3) "daunting" practical inequities. (*Descamps*, *supra*, 133 S.Ct. at pp. 2287-2289.) With respect to the language of the ACCA, the high court explained: "As we have long recognized, ACCA increases the sentence of a defendant who has three 'previous convictions' for a violent felony—not a defendant who has thrice committed such a crime. [Citations.] That language shows . . . that 'Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.' [Citations.] If Congress had wanted to increase a sentence based on the facts of a prior offense, it presumably would have said so; other statutes, in other contexts, speak in just that way. [Citations.] But in ACCA, . . . Congress made a deliberate decision to treat every conviction of a crime in the same manner. . . ." (*Descamps*, *supra*, at p. 2287.) "The Ninth Circuit's approach runs headlong into that congressional choice. Instead of reviewing documents like an indictment or plea colloquy only to determine 'which statutory phrase was the basis for the conviction,' the Ninth Circuit looks to those materials to discover what the defendant actually did. [Citation.]" (*Ibid*.) As a result, "the Ninth Circuit has treated some, but not other, convictions under § 459 as ACCA predicates, based on minor variations in the cases' plea documents." (*Descamps*, *supra*, at p. 2288.)

With respect to the Sixth Amendment, the high court stated, "We have held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' *Apprendi*[, *supra*,] 530 U.S. [at p.] 490. Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns, we recognized in *Shepard* [*v. United States* (2005) 544 U.S. 13], counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime. [*Id.*] at [p.] 25 (plurality opinion); see *id*., at [p.] 28, (THOMAS, J., concurring in part and concurring in judgment) (stating that such a finding would 'giv[e] rise to constitutional error, not doubt'). Hence our insistence on the categorical approach." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.)

The high court continued: "Yet again, the Ninth Circuit's ruling flouts our reasoning—here, by extending judicial factfinding beyond the recognition of a prior conviction. Our modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits. But the Ninth Circuit's reworking authorizes the court to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct. [Citation.] And there's the constitutional rub. The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances. [Citation.] Similarly, as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment. [Citation.] So when the District Court here enhanced Descamps' sentence, based on his supposed acquiescence to a prosecutorial

10

statement (that he 'broke and entered') irrelevant to the crime charged, the court did just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence." (*Descamps*, *supra*, 133 S.Ct. at pp. 2288-2289; see also *Mathis v. United States* (2016) 579 U.S. ___ [2016 WL 3434420, p. *7] [a court determining the truth of a prior opinion under the ACCA "can do no more, consistent with the Sixth Amendment, then determine what crime, with what elements, the defendant was convicted of"].)

"Finally, the Ninth Circuit's decision creates the same 'daunting' difficulties and inequities that first encouraged us to adopt the categorical approach. [Citation.] In case after case, sentencing courts following [the Ninth Circuit's approach] would have to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense. The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. At trial, extraneous facts and arguments may confuse the jury. (Indeed, the court may prohibit them for that reason.) And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. . . . [¶] Still worse, the [Ninth Circuit's] approach will deprive some defendants of the benefits of their negotiated plea deals. Assume (as happens every day) that a defendant surrenders his right to trial in exchange for the government's agreement that he plead guilty to a less serious crime, whose elements do not match an ACCA offense. Under the Ninth Circuit's view, a later sentencing court could still treat the defendant as though he had pleaded to an ACCA predicate, based on legally extraneous statements found in the old record. *Taylor* [*v. United States* (1990) 495 U.S. 575], recognized the problem: '[I]f a guilty plea to a lesser, nonburglary offense was the result of a plea bargain,' the Court stated, 'it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty' to generic burglary. [*Id.*] at [pp.] 601-602. That way of proceeding, on

11

top of everything else, would allow a later sentencing court to rewrite the parties' bargain." (*Descamps*, *supra*, 133 S.Ct. at p. 2289.)

### *McGee*

Prior to *Descamps*, in *McGee*, *supra*, 38 Cal.4th at pages 686-687, our Supreme Court held that it was permissible for the trial court, rather than the jury, to examine the record of a prior conviction to determine whether the conviction qualified as a predicate offense for purposes of sentence enhancement. The court explained that the limited examination of the record of a prior conviction allowed under California law did not run afoul of the Sixth Amendment as the Supreme Court interpreted it in *Apprendi*: "With regard to . . . the nature of the inquiry required (and permitted) in this context under California law . . . we observe that the matter presented is not, as the Court of Appeal appears to have assumed, a determination or finding 'about the [defendant's earlier] conduct itself, such as the intent with which a defendant acted.' Instead, it is a determination regarding the nature or basis of the defendant's *prior conviction*— specifically, whether *that conviction* qualified as a conviction of a serious felony. California law specifies that in making this determination, the inquiry is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted. If the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law. (See, e.g., *People v. Woodell* [(1998)] 17 Cal.4th 448, 452-461.) The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct (see *id*. at p. 460), but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that the *conviction* is of the type that subjects the defendant to increased

12

punishment under California law. This is an inquiry that is quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court." (*McGee*, *supra*, 38 Cal.4th at p. 706.) The *McGee* court acknowledged the possibility that the Supreme Court would interpret the Sixth Amendment more broadly, but elected to await further developments in the law by the high court. (*McGee*, *supra*, at p. 708.)

**Application of *Descamps* to California Recidivism Allegations**

Because our Supreme Court has not spoken on the issue subsequent to *McGee*, the extent to which the Sixth Amendment holding of *Descamps* is applicable to prior convictions alleged in California is not fully defined. Even within the federal system, as noted by Justice Kennedy in his concurring opinion in *Descamps*, *supra*, 133 S. Ct. at page 2293, "the dichotomy between divisible and indivisible state criminal statutes is not all that clear." One court has expressed doubt that the *Descamps* analysis is a good fit with California law, because California's recidivism statutes are largely conduct-based, unlike the elements-based ACCA. "In concluding that the Sixth Amendment was violated here, we do not accept [the defendant]'s suggestion that the specific approach described in *Descamps*, *supra*, 133 S.Ct. 2276 for establishing prior convictions under the ACCA is necessarily required in determining strikes under California's Three Strikes law. The divisible/indivisible approach discussed in *Descamps* springs in large part from the ACCA's focus on the *elements* of the prior conviction: unlike the Three Strikes law, the ACCA prohibits consideration of the conduct underlying the conviction. (See generally *Descamps*, [*supra*] at pp. 2283-2288.)" (*Saez*, *supra*, 237 Cal.App.4th at p. 1208, fn. 22.)

Four Court of Appeal decisions have addressed the application of *Descamps* to California recidivism statutes. Three of these four opinions have concluded that our Supreme Court's analysis in *McGee*, *supra*, 38 Cal.4th 682, is inconsistent with the analysis in *Descamps*, while the fourth found a violation of both state law and the Sixth

13

Amendment. (*People v. Denard* (2015) 242 Cal.App.4th 1012 (*Denard*) [Sixth Amendment violated by use of Florida probable cause affidavit to prove out-of-state manslaughter conviction was a strike]; *People v. Marin* (2015) 240 Cal.App.4th 1344 (*Marin*) [Sixth Amendment requires jury determination of whether defendant personally inflicted great bodily injury in commission of prior offense]; *Saez*, *supra*, 237 Cal.App.4th at p. 1207 ["while *Descamps* did not explicitly overrule *McGee, Descamps*' discussion of the Sixth Amendment principles applicable when prior convictions are used to increase criminal sentences is clear and unavoidable and was adopted by eight of the nine justices on the high court"]; *People v. Wilson* (2013) 219 Cal.App.4th 500 (*Wilson*) [both *McGee* and *Descamps* prohibited trial court from resolving the disputed factual issue of whether defendant personally inflicted great bodily injury in prior offense][4].)

In *Marin*, the Court of Appeal held that, based upon the reasoning in *Descamps*, "it is no longer tenable to draw a distinction, in the words of *McGee,* 'between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute.' (*McGee*, *supra*, 38 Cal.4th at p. 709.) The type of factfinding permitted by *McGee* is virtually indistinguishable from the Ninth Circuit approach that the high court disapproved in *Descamps*. The Ninth Circuit approach permitted an examination of 'reliable materials' to determine '"what facts" can *confident[ly]" be thought to underlie the defendant's conviction* in light of the "prosecutorial theory of the case" and the "facts put forward by the government." [Citation.]' (*Descamps*, *supra*, 133 S.Ct. at p. 2286, italics added.) Similarly, *McGee* permits an examination of the record of conviction to determine 'whether that record reveals whether the conviction *realistically may have been based on conduct* that would not constitute a serious felony under California law.'

_____

[4] *Wilson* did not expressly address whether *McGee* remains viable after *Descamps*, in light of its holding that the prior conviction at issue was invalid under both *McGee* and the Sixth Amendment.

(*McGee, supra*, 38 Cal.4th at p. 706, italics added.) The two approaches—one based on facts 'confidently' believed to underlie the conviction, the other on facts that 'realistically' underlie the conviction—are in all relevant respects indistinguishable. [¶] *Descamps* leaves no true room for debate that this type of factfinding violates the Sixth Amendment." (*Marin, supra*, 240 Cal.App.4th at p. 1362; accord, *Denard, supra*, 242 Cal.App.4th at p. 1034 ["We agree with the conclusions of the courts in *Saez* and *Marin*"].)

**Application of *Descamps* and the Court of Appeal Decisions to Defendant's New York Conviction**

We need not decide the complex issue of whether *Descamps*' analysis of the ACCA applies to California's recidivism scheme, because the constitutional principles flowing from *Apprendi*, and running through *Descamps*, dictate the result in this case.

Robbery in California contains an element not required under New York law— that property be taken from the person or immediate presence of the victim. "A person is guilty of robbery in the third degree when he forcibly steals property." (N.Y. Penal Law § 160.05 (McKinney).) "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." (N.Y. Penal Law § 110.00 (McKinney).) There is "no requirement that the defendant take the property 'from the person or in the presence of another'" under the New York robbery statute. (Prac. Com. foll. N.Y. Pen. Law, § 160.00; *People v. Smith* (1992) 79 N.Y.2d 309, 314.) Unlike the New York statute, section 211 defines robbery in California as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The issue here is whether the trial court's examination of the New York plea colloquy to determine if defendant took property from the person or immediate presence of Jaworski—an element not required by the New York robbery statute—is permitted by the Sixth Amendment.

15

We hold that the trial court's reliance on statements in the plea colloquy from defendant's New York conviction that were not relevant to the crime charged is the type of judicial fact-finding prohibited by the Sixth Amendment as interpreted in *Descamps*. While the precise reach of the Sixth Amendment may not be fully defined as to California law, "this much is clear:  when the elements of a prior conviction do not necessarily establish that it is a serious or violent felony under California law (and, thus, a strike), the court may not under the Sixth Amendment '"make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea," or what the jury in a prior trial must have accepted as the theory of the crime.'  [Citation.]" (*Saez*, *supra*, 237 Cal.App.4th at pp. 1207-1208.)

The trial court's reliance on legally superfluous statements in the plea colloquy to supply the missing element that defendant took property from the person of Jaworski runs afoul of several portions of the *Descamps* analysis.  First, *Descamps* disapproved of a court trying "to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.  [Citation.]  . . .  The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt.  And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances.  [Citation.]" (*Descamps*, *supra*, 133 S.Ct. at p. 2288.)  The trial court plainly went beyond the statutory elements of the New York offense to determine defendant's underlying conduct.

Second, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.)  Defendant's plea was to attempted third degree robbery; assuming he acquiesced to other facts beyond that offense, those facts are superfluous under the Sixth Amendment.  Defendant never waived his right to have a jury determine facts beyond the elements of attempted third degree robbery.

Third, the Supreme Court cautioned that statements of fact in a plea colloquy

16

"may be downright wrong.  A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. . . . [D]uring plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." (*Descamps*, *supra*, 133 S.Ct. at p. 2289.)  What occurred during the plea colloquy in the New York court demonstrates the danger the *Descamps* court envisioned.

The plea transcript reflects that the New York court initially misstated the language of the third count of the indictment[5] in taking defendant's plea.  The third count alleged that defendant "did attempt to forcibly steal property, that being personal property, from Michele Jaworski . . . ."  The New York court subtly restated the allegation, advising defendant that "[i]t's alleged you attempted to forcibly steal property from the person of Michele Jaworski . . . ."  The subtle change was that the indictment alleged in the statutory language that defendant *attempted to forcibly steal personal property*, but the court advised defendant that the allegation was that he *attempted to forcibly steal property from the person*, which is akin to the language in California's robbery statute.  This illustrates the problem anticipated by *Descamps* with consideration of a plea colloquy as to facts beyond the statutory elements of the offense:  the court's initial description of the charge was "downright wrong." (*Descamps*, *supra*, 133 S.Ct. at p. 2289.)  In the next paragraph, in taking the guilty plea, the New York court misstated the allegation in the New York statute and the indictment:  "With respect to the allegation you forcibly stole property from another person armed with a loaded and operable

---

[5] The New York indictment stated in full in the third count as follows:  "The Grand jury of the county of the Bronx by this indictment, accuses the defendant Michael McCaw of the crime of attempted robbery in the second degree admitted as follows:  [¶] The defendant, Michael McCaw, on or about November 3, 1997, in the county of the Bronx, did attempt to forcibly steal property, that being personal property, from Michele Jaworski, and in the course of commission of the crime or in immediate flight therefrom, the defendant displayed what appeared to be a revolver."

17

firearm, do you now enter a plea of guilty?"[6] Defendant answered "Yes" to the court's question, admitting the he forcibly stole property, without admitting the property was taken from the person or immediate presence of Jaworski. Defendant's answer to the New York court's question did not admit conduct satisfying the California robbery statute.

The Attorney General disputes this interpretation of the plea, but even if she is correct that defendant admitted taking property from the person of Jaworski, in the end her argument fails, because *Shepard* does not permit this type of judicial fact-finding based upon a plea. *Shepard*, as explained in *Descamps*, permits a court to consider a plea colloquy in determining whether a prior conviction has been shown by the prosecution, but only to the extent the plea agreement *proves the statutory elements of alleged prior offense.* "[A]s *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." (*Descamps*, *supra*, 133 S.Ct. at pp. 2288-2289.) Defendant agreed to a guilty plea to a lesser offense than that charged in the third count, an offense which did not include all the elements of attempted robbery in California. To sanction consideration of facts not elements of the New York offense "would allow [the] sentencing court to rewrite the parties' bargain." (*Descamps*, *supra*, 133 S.Ct. at p. 2289.) This is not permitted by the Sixth Amendment.

We therefore reverse the recidivism findings and remand for a jury trial on the allegations, unless defendant elects to waive his right to a jury trial and either admit the allegations or submit to judicial fact-finding. (See *Shepard*, *supra*, 544 U.S. at p. 26, fn. 5 [defendant "can waive the right to have a jury decide questions about his prior convictions"].)

---

[6] The New York Court incorrectly stated, and defendant acquiesced, that it was alleged defendant *forcibly stole* property, not that it was alleged defendant *attempted to forcibly steal* property, which further highlights the difficulties involved with parsing the language of the plea colloquy to determine whether a defendant pleaded guilty to the elements of the relevant offense.

18

## DISPOSITION

The trial court's determination that the New York conviction for attempted third degree robbery constitutes a prior serious felony conviction and a strike is reversed. The cause is remanded for a jury trial on the truth of the prior conviction allegations, unless defendant admits the allegations or waives the right to a jury trial. In all other respects, the judgment is affirmed.


KRIEGLER, J.

We concur:


TURNER, P. J.


RAPHAEL, J.*

---

&#42; Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.