Filed 11/14/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARIO ESLAVA,<br><br>        Defendant and Appellant. | A142881<br><br>(City & County of San Francisco<br>Super. Ct. No. 216995) |

This case comes to us on appeal a second time following defendant Mario Eslava's conviction on a jury verdict finding him guilty of voluntary manslaughter. In the first appeal, we affirmed the conviction and an accompanying weapons use enhancement, but reversed Eslava's 18-year prison sentence and remanded for a bench trial to determine whether a prior conviction for battery resulting in serious bodily injury qualifies as a sentence-enhancing strike and serious felony. Eslava pled guilty to the battery in 2009.

The linchpin issue on remand was whether the record of conviction proves beyond a reasonable doubt that Eslava personally inflicted serious bodily injury on the battery victim. To address that issue, the trial court examined the complaint in the 2009 battery case, the transcript of the plea colloquy, and a police report of the underlying incident. During the plea colloquy, Eslava's counsel stipulated that the police report—which describes Eslava hitting the victim with a wooden stick, injuring him seriously enough to require hospitalization—supplies a factual basis for the conviction. Based on this stipulation, the trial court found the requisite personal infliction of serious bodily injury, and reimposed the original sentence.

1

Eslava now appeals again, arguing, as he did in the first appeal, that the evidence is insufficient to support the use of his prior battery conviction as a strike. He also argues that, under the terms of his plea agreement in the battery case, the People are barred from taking the position that his conviction in that case may be used in a subsequent case for sentence enhancement purposes. We see no merit to the argument that Eslava's plea agreement bars the use of his battery prior for later sentence enhancement, but we agree that the evidence is insufficient to support the personal infliction of serious bodily injury finding.

At the back of Eslava's insufficiency of the evidence argument is a contention that it was a violation of the Sixth Amendment for the trial court to engage in any factfinding beyond what is necessarily established by the 2009 battery conviction itself. Since personal infliction of serious bodily injury is not inherent to the conviction, Eslava contends, it was improper for the court—rather than a jury—to make that finding. As we explain below, we must agree.

We reach this conclusion reluctantly, since we remanded specifically for a bench trial and the trial court simply followed our directions. But the law has evolved significantly since we decided the first appeal, and now requires a different disposition. Accordingly, once again we reverse and remand, this time for a jury trial on the issue of personal infliction of serious bodily injury in the 2009 battery, unless Eslava is prepared to waive his constitutional right to jury determination of that issue.

## I.    BACKGROUND

Eslava fatally stabbed his roommate, Troy Swann, in a single room occupancy hotel in San Francisco on January 2, 2011.[1] The evidence adduced at trial concerning

---

[1] Eslava requests that we augment the record in this appeal to include the Clerk's Transcript and the Reporter's Transcript in his first appeal, No. A135568. We grant that request.

that homicide is not material here. At the conclusion of trial in March 2012, the jury returned a verdict finding Eslava guilty of voluntary manslaughter.

The voluntary manslaughter conviction carried various sentencing enhancement allegations, including that Eslava used a deadly or dangerous weapon in the course of the offense (Pen. Code,[2] former § 12022, subd. (b)(1)), that he had committed the offense within five years of completing a prior prison term (§ 667.5, subd. (b)), and that he had previously been convicted of a prior felony conviction which qualified as a strike and a five-year serious felony prior. (§§ 667, subds. (a), (e)(1), 1170.12, subd. (c)(1), 1192.7, subd. (c)(8), 1192.8, subd. (a)). The jury found true the only sentence enhancement allegation submitted to it, the former section 12022, subdivision (b)(1) use of a weapon allegation.

A single prior conviction, resting on Eslava's plea of guilty in 2009 to a felony charge of battery resulting in serious bodily injury (§ 243, subd. (d)), was the basis of the alleged strike and serious felony enhancements and the alleged prison prior. Eslava was charged in the 2009 case with four other counts in addition to battery—two separate counts for assault with a deadly weapon (§ 245, subd. (a)(1)), one count of making a criminal threat of death or great bodily injury (§ 422), and one count of brandishing a weapon (§ 417, subd. (a)(1)), together with sentence enhancement allegations that Eslava personally inflicted great bodily injury (§ 12022.7, subd. (a)) and used a deadly and dangerous weapon (former § 12022, subd. (b)(1)). He pled guilty only to count 2 of the complaint, charging a violation of section 243, subdivision (d). As part of this negotiated plea, the "balance of the complaint . . . and any remaining allegations" were dismissed.

After the jury reached a verdict in Eslava's trial for killing Swann but before returning to the courtroom to pronounce it, the court inquired whether it would be necessary to "proceed before the jury for the finding of the prior." Eslava's counsel responded, "We'll waive the jury, your Honor." The court then inquired directly of

---

[2] Subsequent unspecified statutory references are to the Penal Code.

3

Eslava about the jury waiver, advising him, "[Y]ou have the right to have a jury make a determination as to whether or not the allegation in this case that you had a prior prison commitment has been proved beyond a reasonable doubt. It's my understanding through your attorney that you wish to waive that and have this Court decide the issue. Is that what you wish to do, sir?" Eslava answered "Yes."

At sentencing, the parties focused their attention on whether Eslava's 2009 conviction for violating section 243, subdivision (b), qualified as a strike or a serious felony. The issue turned on whether a police report of the incident established that Eslava personally inflicted serious bodily injury on the battery victim. The defense argued in its sentencing brief that the police report was not a part of record of conviction and was inadmissible hearsay. The People argued that Eslava had admitted the facts stated in the police report because, in the plea colloquy, his counsel stipulated to the facts in the report as the basis for the plea. The police report itself was never offered or admitted into evidence at the sentencing proceeding, but was in the court's file, having been attached to a previous motion by the prosecution to amend the complaint.

Based on the stipulation to the police report by Eslava's counsel, the court found "it was Mr. Eslava who personally inflicted serious bodily injury" on the battery victim, and then proceeded to sentence Eslava on the voluntary manslaughter conviction, with that enhancement taken into account. The sentence Eslava received, in total, was for a prison term of six years on the manslaughter conviction, doubled to twelve years for a strike prior (§ 667, subd. (e)(1)), increased by another five years for a serious felony prior (§ 667, subd. (a)(1), and further increased by a year for the use of a deadly and dangerous weapon in Swann's killing (former § 12022, subd. (b)(1))—amounting to an aggregate term of 18 years.

In an unpublished opinion filed January 22, 2014, we affirmed the manslaughter conviction and weapons use enhancement, but reversed the sentence to the extent it was enhanced for Eslava's prior battery conviction. (*People v. Eslava* (Jan. 22, 2014) A135568 [nonpub. opn.] (*Eslava I*).) We explained that, while the battery prior "may . . .

4

qualify as a serious felony (and thus a strike) if the record of the prior conviction establishes that the defendant 'personally inflicted' the injury [citations], the fact of conviction alone does not establish the element of personal infliction." (*Ibid.,* citing *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508 (*Bueno*) ["[T]o establish that the battery was a serious felony the People were required to show that Bueno *personally* inflicted the injury, rather than that he aided and abetted another . . . Accordingly, Bueno's prior conviction only qualifies as a serious felony if the People proved or Bueno admitted those additional facts regarding the crime."], italics in original; citations and fn. omitted.)

In reversing on this point, we were concerned with whether, procedurally, the trial court had properly adjudicated the facts underlying its strike and serious felony determination. What the court relied upon as the record of conviction for the 2009 battery conviction was not clear. Because the trial court's finding of personal infliction of injury was not based on admitted evidence of record, and because Eslava "never waived his right to a proper judicial determination" of that issue, we remanded for a bench trial, explaining, "the People have the burden to establish that the prior conviction was for a serious felony (and is thus a strike) by proving beyond a reasonable doubt that the record of conviction shows that Eslava personally inflicted the injury upon which the battery conviction was based." (*Eslava I*, *supra*, A135568, citing *People v. Delgado* (2008) 43 Cal.4th 1059, 1065–1066 (*Delgado*) ["[t]he People must prove each element of an alleged sentence enhancement beyond reasonable doubt" and can only sustain their burden of showing that a prior offense qualified for an alleged sentencing enhancement by introducing into evidence a record of the prior conviction that meets all " 'threshold requirements of admissibility' "].)

We held that "Eslava's stipulation that he had a prior conviction under section 243, subdivision (d) was an 'ordinary evidentiary stipulation' that 'was [not] the equivalent of an admission of the truth of the enhancement allegation' or 'tantamount to a plea of guilty.' [Citation.] As a consequence, the trial court could accept the stipulation

5

without advising Eslava of his constitutional rights or determining that he expressly waived them" with appropriate admonitions under *In re Yurko* (1974) 10 Cal.3d 857. (*Eslava I*, *supra*, A135568.) Eslava did advance a Sixth Amendment argument in a supplemental brief, citing *People v. Wilson* (2013) 219 Cal.App.4th 500, 509-516 (*Wilson*). But since *Wilson* does not call into question the mode of determining strike enhancements that we specified for application on remand under *Delgado*, and since, in any event, we found that Eslava had "waived any right he may have had to have the jury decide the truth of the prior conviction allegations" (*Eslava I*, *supra*, A135568), we had no occasion to address the Sixth Amendment issue on the merits.[3]

Thus, we remanded for a bench trial. On remand, the People offered and the court admitted into evidence (1) the complaint by which Eslava was charged in the 2009 battery case, (2) the transcript of the plea colloquy in the 2009 battery case, and (3) the police report of the incident on which the charges in the 2009 battery case were based. The complaint and the plea colloquy were admitted without objection. Eslava objected to the police report on hearsay grounds, but his objection was overruled. After reciting for the record facts taken from the police report describing how Eslava, upset with a postal clerk named George Cousart, pulled a knife and struck Cousart with a club, causing injury serious enough to require hospitalization, the court concluded "There was no one else there . . . Mr. Eslava and Mr. Cousart." It then proceeded to find "that the People have proved beyond a reasonable doubt that the 2009 conviction . . . is a strike prior for purposes of sentencing in this case." And based on that finding, it then reimposed the 18-year sentence that it had originally imposed, again using the battery prior as a strike and a serious felony.

---

[3] Along with the first appeal, Eslava filed a companion petition for writ of habeas corpus alleging that, under the terms of his plea agreement in the 2009 case, the People should be barred from taking the position that his conviction for battery may be treated as a strike and a serious felony in any subsequent case. We summarily denied that petition on the same day we filed our opinion in the first appeal.

## II.    DISCUSSION

A.    *The Plea Agreement in the 2009 Battery Case Does Not Bar the People from Using Eslava's Conviction in That Case for Sentence Enhancement Purposes in This Case*.

We turn first to Eslava's contention that under the terms of his plea agreement in his 2009 battery case, the People are barred from taking the position in a subsequent prosecution that his battery conviction may be used for sentence enhancement purposes. Because we denied Eslava's habeas petition raising this issue summarily, he is free to raise the argument here. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 899.) We now reject it on the merits. It is true, as Eslava argues, that "plea agreements are interpreted according to the general rule 'that ambiguities are construed in favor of the defendant' " (*People v. Toscano* (2004) 124 Cal.App.4th 340, 345) and may be specifically enforced on due process grounds if the prosecution refuses to abide by a commitment it made (*People v. Mancheno* (1982) 32 Cal.3d 855, 860), but those principles do not aid Eslava here. First, it is a cardinal rule of contract interpretation that, before resorting to tie-breaking rules for resolving ambiguity, there must first be genuine ambiguity. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 (*Winet*).) A contract is not ambiguous unless it is " 'reasonably susceptible' " to the interpretation urged. (*Ibid*.) Here, the plea agreement is not reasonably susceptible to the meaning Eslava seeks to place on it because dismissal of the sentence enhancement allegations did not prelude the People from seeking to prove the facts on which those allegations were based in a later proceeding. (*People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1527 ["Generally, . . . when a plea bargain calls for striking an enhancement, that merely means the enhancement cannot be used to enhance the current conviction. The plea bargain does not bar the use of the facts underlying the stricken enhancement in sentencing on a subsequent conviction."]; see *People v. Shirley* (1993) 18 Cal.App.4th 40, 47; *People v. Leslie* (1996) 47 Cal.App.4th 198, 205.)

Second, although Eslava could have changed this default rule in the plea

negotiations and obtained the protection he claims he now has, to do so he would have had to bargain for it specifically in the process of securing dismissal of the enhancement allegation.  (See § 1170.12, subd. (d)(2).)  We see no evidence that he did so.  We do have a declaration from Eslava's trial counsel stating that, because the guilty plea was to a "bare" section 243, subdivision (d), violation, "it was understood" that the personal infliction of bodily injury allegation would not be pursued in the future.  But exactly who was a party to this understanding is not clear from counsel's declaration.  He does not mention that it was discussed verbally with the prosecution or communicated to the prosecution in written form.  Plea agreements are contracts subject to the rules of contract interpretation, but even more fundamentally they are subject to the rules of contract formation.  Mutual assent is necessary to the formation of a contract (Civ. Code, §§ 1550, 1565) and is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 116, p. 155.)  In the absence of any objective evidence of communicated intent, there is no contractual commitment to enforce.  (*Winet*, *supra*, 4 Cal.App.4th at p. 1167 [one party's subjective understanding of a contract amounts to no more than "uncommunicated subjective intent" and is not relevant to contract meaning].)

    B.    *The Evidence Is Insufficient to Support the Court's Finding That Eslava's 2009 Conviction for Battery Resulting in Serious Bodily Injury Is a Serious Felony and a Strike for Sentence Enhancement Purposes.*

Next, Eslava argues that "[p]ersonal infliction of great bodily injury was not proven [in] the proceeding at which [he] entered a guilty plea to violating Penal Code section 243, subdivision (d)."  As a result, he contends, it was improper for the trial court to have found personal infliction of serious bodily injury in this case, since the sole basis

8

for that finding was his counsel's stipulation to the police report as a factual basis for his plea of guilty to the battery charges, which, at most, was admission of nothing more than the minimum elements of that conviction. As explained below, we must agree.

In resolving the first appeal, we remanded for a bench trial after noting that "Eslava concedes that he waived any right he may have had to have the jury decide the truth of the prior-conviction allegations. While he argues . . . that only a jury can determine whether he personally inflicted the injury when he committed battery . . . , he does not explain how this claim survives his jury waiver." (*Eslava I*, *supra*, A135568.) The legal terrain has shifted at this point. Under the circumstances, we cannot now conclude that Eslava waived his right to have a jury determine the issue of personal infliction in this case. At the time of his trial, "[t]he right, if any, to a jury trial of prior conviction allegations" was limited and purely statutory, "deriv[ing] from sections 1025 and 1158, not from the state or federal Constitution." (*People v. Epps* (2001) 25 Cal.4th 19, 23 (*Epps*).)

Based on recently decided United States Supreme Court precedent, as uniformly recognized in a string of published district court of appeal opinions addressing the issue since we issued our opinion in *Eslava I*, we now hold that Eslava is entitled under the Sixth Amendment to a jury trial on the personal infliction of serious bodily injury issue. "When the constitutional right to jury trial is involved," an affirmative, personal waiver is required "even in cases in which the circumstances make it apparent that all involved— the trial court, the prosecutor, defense counsel, and the defendant—assumed that the defendant had waived or intended to waive the right to a jury trial." (*People v. French* (2008) 43 Cal.4th 36, 47 (*French*).) Eslava's on-the-record jury waiver here was narrow. The court asked if he was willing to waive "a jury determination as to whether or not the allegation in this case that you had a prior prison commitment has been proved beyond a reasonable doubt." We cannot assume he would have given a broader waiver, had he been asked. The People concede the point. At oral argument, the Attorney General acknowledged there is not enough in the record for us to conclude that Eslava waived his

9

Sixth Amendment right to a jury trial on whether his 2009 conviction for battery resulting in serious bodily injury constituted a strike.[4]

      1.    The emerging recognition that *Apprendi v. New Jersey* calls into question established judicial strike determination procedure in California.

In California, it has long been established that a sentencing court may make strike and serious felony determinations based on a defendant's entire record of conviction. (*People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*); *People v. Myers* (1993) 5 Cal.4th 1193, 1200). Where the alleged strike prior rests on a plea of guilty or no contest, the court may examine the record of conviction to determine whether the crime "realistically may have been based on conduct" that does not qualify as a strike and serious felony under California law. (*People v. McGee* (2006) 38 Cal.4th 682, 706 (*McGee*)).[5] Under the federal constitution, however, "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." (*Mathis v.*

---

[4] The People have been consistent on this issue. On remand following our decision in *Eslava I*, they joined issue on the merits and made no waiver argument when Eslava invoked his Sixth Amendment right to jury trial.

[5] The nature of the evidence comprising the "record of conviction" for purposes of this inquiry has been worked out over time in the case law. (See *People v. Harrell* (1989) 207 Cal.App.3d 1439, 1444 [charging documents and no contest plea reflected in minute order are part of record of conviction]; *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [reporter's transcript of change of plea hearing]; *People v. Reed* (1996) 13 Cal.4th 217, 220 [reporter's transcript of preliminary hearing]; *People v. Woodell* (1998) 17 Cal.4th 448, 456 [appellate court record]; but see *People v. Trujillo* (2006) 40 Cal.4th 165, 179 [defendant's statements in probation report received after guilty plea accepted is not part of the record of conviction].) The documentary evidence offered to establish the record of conviction—which of necessity will be hearsay in some form—must be admissible under the rules of evidence. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) It is fundamental to this procedural regime of strike determination that the court may "look to the entire record of the conviction—*but no further*" (*Guerrero, supra,* 44 Cal.3d at p. 355, original italics). "The People 'may not relitigate the facts behind the record' " by calling live witnesses. (*People v. Reed*, *supra*, 13 Cal.4th at p. 226.)

*United States* (2016) 579 U.S. __ [136 S.Ct. 2243, 2252] (*Mathis*), citing *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*); see also *Jones v. United States* (1999) 526 U.S. 227, 243, fn. 6 (*Jones*).)  Foundational to *Apprendi* is the notion that, under the Sixth Amendment, the jury is a bulwark "standing between a defendant and the power of the State." (*Shepard v. United States* (2005) 544 U.S. 13, 25 (*Shepard*).)

The California Supreme Court reconciled these potentially clashing principles in *McGee*.  There, the Court drew a distinction between "sentence enhancements that require factfinding related to the circumstance of the current offense…—a task identified by *Apprendi* as one for the *jury*—and the examination of *court records* pertaining to a defendant's *prior conviction* to determine the nature or basis of the conviction—a task to which *Apprendi* did not speak and 'the type of inquiry that judges traditionally perform as part of the sentencing function.' " (*McGee*, *supra*, 38 Cal.4th at. p. 709, italics in original.)  The Court acknowledged "the possibility that the United States Supreme Court, in future decisions, may extend the *Apprendi* rule" to "the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute," but absent clear guidance from the high court was "reluctant to assume, in advance of such a decision . . . , that the federal constitutional right to a jury trial will be interpreted to apply in the . . . context" of judicial strike determination procedure.  (*Ibid*.)

Although our Supreme Court has yet to weigh in,[6] there is a growing recognition among the Court of Appeal panels to have addressed the issue in published opinions that that guidance has now been given.  Summing up the state of the law after canvassing recent United States Supreme Court precedent last year, a Second District Court of Appeal panel explained that "judicial factfinding beyond the elements of the defendant's

---

[6] On February 17, 2016, the Court granted review in *People v. Gallardo*, S231260, to address the issue.

11

prior conviction—so called 'superfluous facts' or 'non-elemental facts'—is generally constitutionally impermissible," unless, "in entering a guilty plea, the defendant waived his right to a jury trial as to such facts and either admitted them or they were found true by the court with defendant's assent." (*People v. Marin* (2015) 240 Cal.App.4th 1344, 1364 (*Marin*).)

In *Marin*, the alleged strike conviction, entered following a no contest plea, was vehicular manslaughter. (*Marin*, *supra*, 240 Cal.App.4th at pp. 1349–1350.) It was not clear from the fact of the conviction alone whether the defendant personally inflicted great bodily injury on a person other than an accomplice (§ 1192.7, subd. (c)(8)). The trial court, following established procedure under *McGee*, examined the abstract of judgment and determined that the conviction qualified as a strike. (*Id.* at pp. 1350–1351.) The Court of Appeal reversed and remanded for a jury trial on the personal infliction issue, concluding that, in light of *Descamps v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2276, 2282] (*Descamps*), "it is no longer tenable to draw a distinction, in the words of *McGee,* 'between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute.' " (*Marin*, *supra*, at p. 1362.)

*Descamps*, according to the *Marin* court, "is the extension of *Apprendi* that the California Supreme Court contemplated in *McGee.*" (*Marin*, *supra*, 240 Cal.App.4th at p. 1363.) *Marin* is one of five published Court of Appeal opinions to have reached this conclusion over the last 18 months. (See also *People v. Navarette* (Oct. 27, 2016, F069534) ___ Cal.App.5th ___ [2016 Cal. App. LEXIS 914, p. *49] (*Navarette*) [murder conviction from Mexico could not constitute a strike and serious felony prior because the elements were a "mismatch" with California law (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2)), and the trial court had no "power to parse the record of the Mexican proceeding to evaluate the disputed facts"]; *People v. McCaw* (2016) 1 Cal.App.5th 471,

12

484, review granted Oct. 19, 2016, S236618 (*McCaw*) [judicial determination that New York conviction for attempted third degree robbery meets California definition of attempted robbery involved prohibited factfinding]; *People v. Denard* (2015) 242 Cal.App.4th 1012, 1030–1034 (*Denard*) [judicial determination that Florida manslaughter conviction meets California definition of manslaughter involved prohibited factfinding]; *People v. Saez* (2015) 237 Cal.App.4th 1177, 1196–1197, 1205–1208 (*Saez*) [judicial determination that Wisconsin convictions for false imprisonment while armed and for reckless use of a weapon involved personal use of a firearm involved prohibited factfinding].) In the view of these courts, "[t]he California procedure for determining whether prior convictions qualify as strikes, insofar as it is based on judicial factfinding beyond the elements of the offense, is incompatible with the United States Supreme Court's view of the Sixth Amendment right to a jury trial . . . . In short, such judicial factfinding, which looks beyond the elements of the crime to the record of conviction to determine what conduct 'realistically' underlaid the conviction, violates the Sixth Amendment right to a jury trial." (*Marin, supra,* at p. 1363.)[7]

> 2.     *Descamps v. United States* bars judicial factfinding in recidivist sentencing insofar as it involves facts beyond the elements necessarily implied in a prior conviction.

*Descamps* arose under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), a federal criminal statute exposing defendants with certain prior convictions to

---

[7] In a sixth, somewhat older case, *Wilson*, *supra*, 219 Cal.App.4th 500, the court concludes that the Sixth Amendment prohibits judicial resolution of disputed facts concerning "a defendant's prior conduct," but points out that under California law *McGee* has always prohibited factfinding concerning underlying conduct. (*Wilson*, at p. 516 ["We need not consider here whether the broader application of *Apprendi* and *Descamps* to California's sentence enhancement scheme would leave intact the kinds of findings— e.g., those not concerning the facts of a defendant's prior conduct—heretofore endorsed under California law. We hold only that federal law prohibits what *McGee* already proscribed: A court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense."].)

13

enhanced sentences. Burglary is among the sentence-enhancing crimes specified in the ACCA. Broadly stated, the issue in *Descamps* was whether the prior conviction at issue there, for a California burglary, was equivalent to "generic" burglary, thus qualifying it for sentencing-enhancing purposes under the ACCA. "To determine whether a past conviction is for" an ACCA sentence-enhancing crime, the Court explained, federal courts use what has become known as the " 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.,* the offense as commonly understood. The prior conviction qualifies as an ACCA [sentence-enhancing crime] only if the statute's elements are the same as, or narrower than, those of the generic offense." (*Descamps*, *supra*, 133 S.Ct. at p. 2281.)

In prior ACCA cases, the Court had "approved a variant of this method—labeled (not very inventively) the 'modified categorical approach'—when a prior conviction is for violating a so-called 'divisible statute.' That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." (*Descamps*, *supra*, 133 S.Ct. at p. 2281.)[8] The

---

[8] See *Taylor v. United States* (1990) 495 U.S. 575; *Shepard*, *supra*, 544 U.S. 13; *Marin*, *supra*, 240 Cal.App.4th at p. 1363 ("In determining whether a prior conviction qualifies to be used to increase a defendant's punishment under a recidivist sentencing statute, the trial court may, without violating the Sixth Amendment right to a jury trial, use 'the documents . . . approved in *Taylor* and *Shepard*—i.e., indictment, jury instructions, plea colloquy, and plea agreement' (*Descamps, supra,* [133 S.Ct. at p. 2285], fn. 2)—to the extent they show the *statutory elements* of the crime of which the defendant was convicted (*id.* at p. [2288]). This kind of factfinding is permissible because it simply reflects the crime (and more particularly the elements of the crime) which the defendant admitted in his guilty plea following a waiver of his right to a jury

14

specific question presented in *Descamps* was "whether sentencing courts may . . . consult those additional documents when a defendant was convicted under an 'indivisible' statute—*i.e.,* one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense. That would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA [sentence-enhancing crime] even though the elements of the crime fail to satisfy our categorical test." (*Id*. at pp. 2281–2282.)

It was undisputed in *Descamps* that the California conviction at issue was under an "indivisible statute" (§ 459) and that, on its face, the elements required for conviction under that statute are broader than those of "generic" burglary because unlawful entry into the burgled structure is not required under section 459, while it is required for "generic" burglary under the ACCA. (*Descamps*, *supra*, 133 S.Ct. at pp. 2281, 2288–2289, 2293.) Because Descamps pled guilty to violating section 459, it was impossible to determine whether the unlawful entry element was satisfied without employing the "modified categorical" approach to determine exactly how he committed the crime. The District Court did just that, consulting "the record of the plea colloquy, to discover whether Descamps had 'admitted the elements of a generic burglary' when entering his plea." (*Descamps, supra*, 133 S.Ct. at p. 2282.) It concluded from the plea colloquy that he had indeed admitted that fact, and it enhanced his sentence accordingly. (*Ibid.*)

The Ninth Circuit affirmed, but the United States Supreme Court reversed. The Court explained that it was improper for the District Court to do anything more than compare the legal elements of burglary under section 459 to the legal elements of "generic" burglary. (*Descamps*, *supra*, 133 S.Ct. at pp. 2281, 2288–2289, 2293.) Since burglary under section 459 may be committed without forcible entry into the burgled structure, it is broader than "generic" burglary and thus may not be considered an ACCA

trial, or the crime (and its elements) a jury determined beyond a reasonable doubt that he committed." ), original italics and citations.

15

predicate crime. (*Id.* at p. 2293.) Examination of the record of a prior conviction may be undertaken in very narrow circumstances, the Court explained. (*Id.* at pp. 2283–2286.) Only in cases where the prior conviction at issue is charged under a statute embracing several alternative crimes (so-called "divisible" statutes) may the record of conviction be consulted, and then only for the limited purpose of determining which alternative crime formed the basis of the conviction.[9] (*Id.* at p. 2281.) Under no circumstances, the Court emphasized, may the record of a prior conviction be consulted to discern the underlying facts of the prior conviction offense. (*Id.* at pp. 2283, 2285–2287.) Notably, the Court reached this conclusion, in part, based on the Sixth Amendment. (See *id*. at p. 2288 ["[T]here's the constitutional rub. The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances."]; *ibid.* [adopting the observation offered in Justice Thomas' concurrence in *Shepard, supra,* 544 U.S. at p. 28, that a judicial finding of non-elemental facts "would 'giv[e] rise to constitutional error, not doubt' "].)

Even though, strictly speaking, *Descamps* addresses a question of federal statutory interpretation, all five of the Court of Appeal panels to have considered its implications

---

[9] " 'The type of factfinding permitted by *McGee* is virtually indistinguishable from the Ninth Circuit approach that the high court disapproved in *Descamps*. The Ninth Circuit approach permitted an examination of "reliable materials" to determine " 'what facts' can '*confident[ly]' be thought to underlie the defendant's conviction* in light of the 'prosecutorial theory of the case' and the 'facts put forward by the government.' [Citation.]" (*Descamps, supra,* [133 S.Ct. at p. 2286], italics added.) Similarly, *McGee* permits an examination of the record of conviction to determine "whether that record reveals whether the conviction *realistically may have been based on conduct* that would not constitute a serious felony under California law." (*McGee, supra,* 38 Cal.4th at p. 706, italics added.) The two approaches—one based on facts "confidently" believed to underlie the conviction, the other on facts that "realistically" underlie the conviction—are in all relevant respects indistinguishable.' " (*McCaw*, *supra*, 1 Cal.App.5th at p. 483, rev. granted, quoting *Marin*, *supra*, 240 Cal.App.4th at p. 1362, original italics.)

16

for sentencing enhancement in California have read its reasoning, in substance, as a Sixth Amendment holding. As the panel in *Saez* explains, "We recognize that the Sixth Amendment discussion in *Descamps* . . . was not an unequivocal holding, and we are accordingly hesitant to conclude—without first hearing from our state Supreme Court— that *Descamps* has 'undermine[d]' *McGee* . . . [citations.] But we are bound by rulings of the United States Supreme Court on matters of federal law. [Citations.] And while *Descamps* did not explicitly overrule *McGee, Descamps*'s discussion of the Sixth Amendment principles applicable when prior convictions are used to increase criminal sentences is clear and unavoidable and was adopted by eight of the nine justices on the high court. Under these unusual circumstances, we are compelled to apply those constitutional principles here." (*Saez*, *supra*, 237 Cal.App.4th at p. 1207.)

*Saez*, the first of the recent Court of Appeal opinions to adopt this reading of *Descamps*, is especially instructive. Presiding Justice Humes, who authored our first opinion in this case, wrote for the panel there. The *Saez* opinion addresses whether the record of conviction pertaining to a defendant's guilty plea to two prior Wisconsin offenses, one for false imprisonment while armed, and one for reckless use of a firearm, could support a judicial determination that these offenses were sentence-enhancing strikes and serious felonies. The facts there were quite close to what we have here. The key issue was whether the defendant personally used a firearm committing the Wisconsin offenses. (*Saez*, *supra*, 237 Cal.App.4th at p. 1192.) An affidavit of probable cause attached to the complaint in the Wisconsin case described in some detail the facts of the offense, including the defendant's personal use of a firearm. And the defendant, through counsel, stipulated during the plea colloquy that the facts stated in the complaint supplied a basis for his plea.[10] (*Id*. at pp. 1192, 1196.)

---

[10] "Before accepting a guilty or no contest plea pursuant to a plea agreement in a felony case, the trial court is required to determine that a factual basis for the plea exists. [Citations.] 'The purpose of the requirement is to protect against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to

17

The *Saez* court concluded that, while a judicial strike finding based on such a stipulation is permissible under *McGee*, it is not permissible under *Descamps*. *"Descamps* declared that the Sixth Amendment prohibits 'a sentencing court [from] "mak[ing] a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea." ' " (*Saez*, *supra*, 237 Cal.App.4th at p. 1206.) Applying the principle that " '[a] guilty plea "admits every element of the crime charged . . . ," ' but no more," the court concluded: "Saez admitted to the elements of false imprisonment while armed and of reckless use of a dangerous weapon by pleading guilty to those crimes. But he did not admit, or waive his Sixth Amendment rights regarding, the additional facts on which the strike finding was contingent: that he *personally* used a firearm and that the reckless use of a firearm occurred in the course of the false imprisonment. Nor did his stipulation to the complaint as the factual basis of his plea constitute a waiver of Sixth Amendment rights or an admission as to those additional facts." (*Ibid.*)

> 3. The trial court's finding that Eslava personally inflicted serious bodily injury in committing the 2009 battery violated Eslava's Sixth Amendment right to jury determination of that issue.

We find *Saez*, *Marin*, *Denard*, *McCaw* and *Navarette* to be persuasive. As those courts point out, the reasoning of *Descamps* leads ineluctably to the conclusion that a judicial strike and serious felony determination based on the record of a prior conviction contravenes the Sixth Amendment insofar as it rests on facts beyond the elements of the conviction, unless the defendant waives a jury as to those facts and either admits them or assents to the court's finding them. *Mathis, supra*, 136 S.Ct. at p. 2253, filed at the end of the high court's 2015–2016 term, fortifies our conclusion on this point. In *Mathis*,

---

recognize that his acts do not constitute the offense with which he is charged. [Citation.] Inquiry into the factual basis for the plea ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead.' " (*French*, *supra*, 43 Cal.4th at p. 50.)

which applies *Descamps* in another ACCA case, the Court left no room for doubt that its holding in *Descamps* is anchored in the Sixth Amendment. "[A] judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense," the Court declared in *Mathis*. (*Id*. at p. 2252.) "He is prohibited from conducting such an inquiry himself; and so too he is barred from making a disputed determination about 'what the defendant and state judge must have understood as the factual basis of the prior plea' or 'what the jury in a prior trial must have accepted as the theory of the crime.' [Citations] He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." (*Ibid*.)

The prior convictions in *Mathis* were for burglary under Iowa law. (*Mathis*, *supra*, 136 S.Ct. at p. 2250.) The Iowa statute defining burglary was "indivisible" in the sense that it defined only a single crime, but the issue raised in comparing it to generic burglary under the ACCA was that, under the generic offense, burglary requires entry into a " 'building or structure,' " while burglary in Iowa can be committed in a broader range of places (" 'any building, structure, [or] land, water, or air vehicle' "). (*Mathis*, *supra*, at p. 2250.) These alternative ways of committing burglary were, as the high court put it, different "means" of committing the crime of burglary, not different, divisible elements of burglary. (*Ibid*.) Since it was impossible to determine from the record of conviction alone exactly what means of committing burglary Mathis had used, factfinding was necessary beyond the elements of the crime. And under the Sixth Amendment, the high court held, a jury must perform that factfinding. "Whatever the statute says, or leaves out, about diverse ways of committing a crime makes no difference to the defendant's incentives (or lack thereof) to contest such matters," the high court pointed out. (*Id*. at p. 2253.) Thus, "the court below erred in applying the modified categorical approach to determine the means by which Mathis committed his prior

19

crimes. [Citation.] ACCA . . . treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence." (*Ibid*.)

In this case, there is no question that the issue of personal infliction of serious bodily injury—as but one "means" of committing battery in violation of section 243, subdivision (d)—is a "non-elemental fact." Indeed, that was the premise of our reversal of Eslava's sentence in the first appeal. (See *Bueno*, *supra*, 143 Cal.App.4th at p. 1508.) It was an additional, evidentiary fact that the People were not required to plead to make out a legally sufficient charge of battery with serious bodily injury in count 2 of the complaint in the 2009 battery case. In entering a guilty plea to that count, Eslava did not waive his right to jury determination of this key issue; nor could he have done so, since the admonition preceding the jury waiver made no mention of any such right. His stipulation through counsel that there was a factual basis for the plea established no more than the elements of a section 243, subdivision (d) violation (*French*, *supra*, 43 Cal.4th at p. 52 ["defendant's stipulation to the factual basis for the plea as described by the prosecutor" and acknowledgement that prosecution had "witnesses lined up for this trial that will support what the D.A. read in terms of the factual basis" does not constitute admission of aggravating circumstances justifying imposition of upper term sentence]), and any independent reliance on the police report to discern the facts on which the battery conviction was based was improper (*Shepard*, *supra*, 544 U.S. at p. 16 ["sentencing court [may not] look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary"]).

4.     The trial court's finding that Eslava personally inflicted serious bodily injury in committing the 2009 battery violated both federal and state law.

Citing *People v. Sample* (2011) 200 Cal.App.4th 1253, the People argue there has been no Sixth Amendment violation because the manner in which Eslava committed the 2009 battery has never been genuinely disputed. They insist that, through counsel, Eslava admitted personal infliction of serious bodily injury on Cousart in stipulating to the police report. We agree that under *Descamps* and *Mathis* judicial strike determinations remain permissible based on facts shown to have been *admitted* by the defendant in the record of conviction, even if those facts go beyond those implied by the elements of a prior conviction. (See *Marin*, *supra*, 240 Cal.App.4th at p. 1364.) This has always been true under *McGee* as well, as illustrated by *Sample*. But the key difference is that, because *Descamps* and *Mathis* recognize a Sixth Amendment right to jury trial in this setting, while *McGee* does not, any such admission must now be accompanied by a jury waiver. (See *id*. at p. 1364 ["under our understanding of *Descamps,* if the prosecution seeks to prove [a non-elemental] fact by resort to documents in the record of conviction, defendant is entitled to a jury trial on the issue whether he personally inflicted great bodily injury on a person other than an accomplice, unless the defendant waived his right to a jury trial as to such facts *and* either admitted them or they were found true by the court with defendant's assent"], italics added.) As noted above, Eslava gave no such waiver. (See *ante,* pp. 9–10.)

The United States Supreme Court's reasoning in *Descamps* and *Mathis* appears to foreclose any reliance on Eslava's stipulation to the police report as a basis for the trial court's strike determination in any event. In *Descamps*, the high court explains that sentencing courts applying the "modified categorical" approach it rejected there would often find that, by failing to speak up, a defendant "admitted in a plea colloquy . . . facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant

21

generic offense." (*Descamps*, *supra*, 133 S.Ct. at p. 2289). The problem with finding facts based on tacit admissions of this sort, the high court said, is these facts "may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. . . . [D]uring plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. In this case, for example, Descamps may have let the prosecutor's statement go by because it was irrelevant to the proceedings. He likely was not thinking about the possibility that his silence could come back to haunt him in an ACCA sentencing 30 years in the future." (*Id.* at p. 2289.) *Mathis* makes the same point. (See *Mathis, supra,* 136 S.Ct. at p. 2253.)

Even assuming *Sample* might apply on its own terms, as a matter of state law, without regard to *Descamps* and *Mathis*, it is distinguishable. " 'Whether [a] statement constitutes an adoptive admission [under Evidence Code section 1221] is "determined upon the facts and circumstances therein presented." ' [Citation.] For a statement to be an adoptive admission, there must be sufficient evidence to sustain a finding that (1) the defendant heard and understood the statement under circumstances normally calling for a response, and (2) the defendant adopted the statement as true by the defendant's words or conduct." (*Sample*, *supra*, 200 Cal.App.4th at p. 1262.) The prosecutor in *Sample* recited specific facts during the plea colloquy, and the defendant elected to stand mute. (*Id*. at p. 1260.) In this case, by contrast, the police report was referenced only in general terms during the plea colloquy. It was identified by the prosecutor for the record by the report number it bore, but was never offered or presented at the hearing. Because there is no indication whether Eslava ever read the report or was aware of any specific facts recited in it, we cannot conclude his counsel's stipulation to it constitutes an adoptive admission. Moreover, unlike *Saez*, where an affidavit of probable cause was attached to the charging document itself, here the police report was not part of the record of

22

conviction. Since the police report was the primary piece of evidence supporting the finding of personal infliction of serious bodily injury, and we find it to be inadmissible hearsay, outside of the record of conviction, the finding cannot be sustained under federal or state law. (See *French*, *supra*, 43 Cal.4th at pp. 51–52; *Shepard*, *supra*, 544 U.S. at pp. 25–26.)

In a factual context similar to the one before us, *People v. Learnard* (Oct. 28, 2016, B260824) ___ Cal.App.5th ___ [2016 Cal.App. LEXIS 927], recently held that a defendant's prior conviction by plea for a violation of former section 245, subdivision (a)(1)[11] (assault with a deadly weapon or by means of force likely to produce great bodily injury), could not be used as a strike to increase Learnard's sentence because the trial court's strike finding was not supported by substantial evidence. (*Id*. at pp.*6–*12.) In that case, the evidence of the prior conviction consisted of the information, the abstract of judgment, the preliminary hearing transcript, and the preconviction probation report, which drew its facts from the police report. (*Id*. at pp. *3–*4.) The information had charged Learnard with a violation of former section 245, subdivision (a)(1) in that he committed " 'an assault . . . with a deadly weapon, to wit, [a] baseball bat, and by means of force likely to produce great bodily injury.' " (*Id*. at p. *4, italics omitted.) The only means of violating the statute that was statutorily defined as a strike was assault by use of a deadly weapon. (§ 1192.7, subd. (c)(31); *Learnard, supra,* ___ Cal.App.5th ___ [2016 Cal.App. LEXIS 927, at p. *6.) The abstract of judgment following Learnard's plea also listed both means of violating the statute. (*Id.* at p. *4.) The preliminary hearing transcript showed there was evidence of both use of a weapon and means of force likely

---

[11] The ambiguity involved in convictions under section 245 were presumably alleviated to some extent by the amendments in 2011, which separated the two means described in former subdivision (a)(1) by placing the "means of force" language into a new subdivision (a)(4). (Stats. 2011, ch. 183, § 1 (AB 1026), effective January 1, 2012)

to produce great bodily injury.[12] (*Id.* at pp. \*8–\*9.)  Because the information, preliminary hearing transcript and preconviction report all mentioned Learnard's use of a baseball bat in the assault (*id.* at pp. \*4–\*5, \*7–\*9, & fn. 8), the trial court determined Learnard's conviction was, in fact, for use of a deadly weapon and imposed a strike sentence.  (*Id.* at p. \*5.)

Relying strictly on state law, the Second Appellate District, Division One reversed, holding the trial court "went beyond reasonable inference" from the record of conviction, "actually weighed the evidence contained in those documents in order to make its own factual determination about the nature of the offense," and in doing so ignored "evidence that established an assault with force likely to produce great bodily injury." (*Learnard*, *supra*, ___ Cal.App.5th ___ [2016 Cal. App. LEXIS 927, at pp. \*8–9].)  Because "the evidence presented by the prosecution established appellant's prior conviction could have rested on use of a deadly weapon *or* force likely to produce great bodily injury, it was insufficient to prove appellant guilty of a prior serious felony conviction beyond a reasonable doubt." (*Id.* at p. \*9.)  Addressing specifically the information taken from the police report, the court explained that that report "sets forth only the appellant's assault on the victim with a baseball bat.  But there is no way to determine whether the police report itself recounted other conduct that was simply omitted from the preconviction report.  And there is no indication that the facts recounted in the preconviction report formed the factual basis for appellant's plea.  In the absence of any evidence that appellant stipulated to or even acknowledged the facts as set forth in

---

[12]  "[T]he victim testified that appellant hit the victim's left shoulder as he struck the victim's car with a baseball bat.  But the victim also testified that appellant grabbed him with both hands and tried 'to tear [him] out of the car.'  In concluding that the conduct described constituted an assault with a deadly weapon and thus a serious felony, the court again simply ignored evidence that established an assault with force likely to produce great bodily injury." (*Learnard*, *supra*, ___ Cal.App.5th ___ [2016 Cal.App. LEXIS 927, at pp. \*8–\*9].)

24

the preconviction report in entering his plea, this document has no relevance in determining the nature or basis of the crime of which appellant was actually *convicted*." (*Id.* at pp. *9–10, fn. 8, original italics.)

The same reasoning applies here. The trial court relied on information taken from a police report to determine, factually, that the allegation of use of force "resulting in bodily injury" meant that Eslava had personally inflicted serious bodily injury on Cousart. Absent evidence that Eslava was aware of those specific facts in the police report when he entered his plea, "it must be presumed that [his] conviction under [section 243, subdivision (d)] was for the least serious form of the offense." (*Learnard*, *supra*, ___ Cal.App.5th ___ [2016 Cal.App. LEXIS 927, at p. *9].)

> 5. A jury trial on the issue of personal infliction of serious bodily injury is warranted, should the People elect to pursue one.

" 'Failure to submit a sentencing factor to the jury, like failure to submit an element [of the crime] to the jury, is not structural error.' " (*French*, *supra*, 43 Cal.4th at p. 52.) "Such an error does not require reversal if the reviewing court determines it was harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California* (1967) 386 U.S. 18." (*French*, *supra*, at pp. 52–53; accord, *Neder v. United States* (1999) 527 U.S. 1, 19.) Under this test, harmless error may be found "if the evidence supporting [the sentencing] factor is overwhelming and uncontested, and there is no 'evidence that could rationally lead to a contrary finding.' " (*French*, *supra*, 43 Cal.4th at p. 53, quoting *Neder, supra,* 527 U.S. at p. 19.) Here, the trial court's finding of personal infliction of serious bodily injury rests, ultimately, on the police report, which contains untested and inadmissible hearsay. What remains in the record of conviction—the complaint and the transcript of the plea colloquy—is uncontested, but we cannot say that it supplies overwhelming evidence for the personal infliction of serious bodily injury finding.

No double jeopardy bar prevents retrial of a sentencing enhancement after reversal for insufficiency of the evidence, on Sixth Amendment grounds (*Marin*, *supra*, 240

Cal.App.4th at pp. 1364–1365), or state law grounds (*Learnard*, *supra*, ___ Cal.App.5th ___ [2016 Cal.App. LEXIS 927, at p. *10, fn. 9]).  "[O]ne is not placed 'twice in jeopardy for the same offense' when the details of misconduct which has already resulted in . . . *dismissal pursuant to a plea bargain* . . . are presented in a later proceeding on the separate issue of the appropriate penalty for a *subsequent* offense." (*People v. Melton* (1988) 44 Cal.3d 713, 756, fn. 17, first italics added, second italics in original.)  The record here contains enough evidence to warrant a limited further trial on remand, should the People elect to pursue one.[13]  Count 2 of the complaint, to which Eslava pleaded guilty, sets forth in a single, brief paragraph the following allegations:  "The said defendant, MARIO ESLAVA, did in the City and County of San Francisco, State of California, on or about the 21st day of January, 2009, commit the crime of BATTERY WITH SERIOUS BODILY INJURY, to wit:  Violating Section 243(d) of the Penal Code, a Felony, in that the said defendant did willfully, unlawfully, and personally use force and violence upon the person of GEORGE COUSART, resulting in the infliction of serious bodily injury on such person."  A separate, additional paragraph—factually but not legally redundant—alleged the sentencing enhancement charge that "It is further alleged that in the commission of the above offense the said defendant, MARIO ESLAVA, personally inflicted serious bodily injury upon GEORGE COUSART, not an accomplice . . . ."

---

[13] Because the People have already had two opportunities to prove up personal infliction of serious bodily injury, we have considered simply remanding for resentencing with directions not to consider the 2009 battery as a serious felony or strike, as Eslava urges us to do, and as the appellate panels in *Navarette*, *Saez*, *Denard,* and *Wilson* did. But we cannot know what may be in the record of conviction beyond the materials submitted to the trial court so far.  We agree with the approach taken by the appellate panel in *Marin*, which, seeing no double jeopardy bar, noted that "retrial of . . . strike allegation[s] after reversal for insufficient evidence is permissible" (*Marin*, *supra*, 240 Cal.App.4th at p. 1366), and then remanded for retrial, even though there, as here, the court was reversing a strike determination for a second time. (See *Marin*, *supra*, 240 Cal.App.4th at pp. 1363, 1364–1367.)

While this separate sentencing enhancement charge was dismissed as part of the plea agreement, as Eslava emphasizes throughout his briefs, one plausible reading of the record is that Eslava nonetheless admitted the means by which he committed the crime—personal infliction of serious injury on Cousart—because of the particular way in which the People pleaded Count 2. Whether that was Eslava's intention seems debatable, among other things for the reasons the United States Supreme Court gave in *Descamps* and *Mathis* for narrowly interpreting a defendant's failure to contest "superfluous" facts in a plea colloquy. (*Descamps*, *supra*, 133 S.Ct. at p. 2288; accord *Mathis, supra,* 136 S.Ct. at p. 2253.) The record here is ambiguous. On the one hand, the particularly pleaded allegations in Count 2 suggest that Eslava admitted personally inflicting serious bodily injury on Cousart, while, on the other hand, the dismissal of the strike enhancement together with "any remaining allegations" casts doubt on whether he intended to admit anything beyond the minimum elements of a section 243, subdivision (d) violation.

We conclude that Eslava has a Sixth Amendment right to have a jury resolve the issue. *Descamps* and *Mathis* prevent a court from looking at the record of conviction and drawing the factual inference that Eslava admitted inflicting serious bodily injury on Cousart, but those cases do not prevent the People from asking a jury to draw that inference (cf. *People v. Moenius* (1998) 60 Cal.App.4th 820, 825, 827 [allegation in information specifically charging appellant with burglary of victim's residence and minute order indicating that appellant pled guilty to that charge as second degree burglary found to be substantial evidence that the conviction was for " 'burglary of an inhabited dwelling house . . . or inhabited portion of any other building' " and thus a qualifying offense under the three strikes law]) or to find personal infliction of serious bodily injury on some other basis that may be supported by the record of conviction. In a jury trial, of course, the jury must be properly instructed that the People bear the burden of proof beyond a reasonable doubt of all elements of the alleged strike and serious felony offense, and that, in the absence of such proof, it must presume that Eslava intended to

27

admit no more than the minimum elements.  Any jury trial on this issue may be abbreviated, and the results may be dictated by the minimum elements presumption, but if the parties wish to proceed with one, it must take place.

## III.    DISPOSITION

We reverse the sentence and remand for further proceedings to determine whether Eslava personally inflicted serious bodily injury on a person other than an accomplice in committing the 2009 battery.  Eslava is entitled to a jury trial on the personal infliction of serious bodily injury issue, unless he waives a jury and either admits the necessary facts or assents to the court's finding of them without a jury.  The evidentiary scope of any trial on remand shall be limited to the record of conviction.  Once the required factfinding is completed, the court shall resentence Eslava in accordance with the facts found.  In the event the People elect not to proceed with a retrial of the issue of personal infliction of great bodily injury, the court shall resentence Eslava without considering the 2009 battery to be a serious felony or a strike.

_____
Streeter, J.

We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.

A142881/*People v. Eslava*

29

People v. Eslava (A142881)


Trial Court:   City & County of San Francisco Superior Court

Trial Judge:   Hon. Anne-Christine Massullo

Counsel:

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Bruce M. Slavin, Deputy Attorney General for Plaintiff and Respondent.